| 132 | 675 |
| e134 | 591 |
| 134 | 592 |

STATE OF IOWA, Appellee, v. CHARLES WOODARD, Appellant.

**Examination of witnesses:** INDEFINITENESS AS TO TIME. Where the subject matter inquired about of a witness relates to a time wholly immaterial to the issue, the sustaining of an objection to the evidence on that ground is not prejudicial error, since, if material for any purpose, an inquiry following the ruling may be limited to the time in controversy.

**Exclusion of evidence:** HARMLESS ERROR. The exclusion of evidence which is subsequently admitted is harmless error.

**Evidence:** REMOTENESS. Where it was the theory of the State on a prosecution for murder that deceased was poisoned, statements of defendant that he had strychnine in his possession, though made at a remote time were admissible, the lapse of time affecting only the weight to be given the testimony.

**Impeachment:** USE OF GRAND JURY MINUTES. The minutes of evidence taken before the grand jury cannot be used upon the trial for impeachment purposes; still, counsel for the State, having the right to show variant statements of the witness, may refer to such minutes for the purpose of conducting the examination.

**Murder:** MOTIVE: INSTRUCTION. Where, in a prosecution for murder, it is sought to show that insurance on the life of deceased payable to the defendant was the motive for the crime, the actual validity of the insurance is immaterial, as the motive must rest on defendant's belief in its validity; but a submission of the question of validity in addition to defendant's belief on the subject is not an error of which he can complain.

**Murder:** SUFFICIENCY OF EVIDENCE. On a prosecution for murder the circumstances relied upon by the State are held sufficient to support a finding of motive and that defendant committed the act by use of poison.

*Appeal from Decatur District Court.*— HON. H. K. EVANS, Judge.

SATURDAY, JULY 14, 1906.

REHEARING DENIED, FRIDAY, JANUARY 18, 1907.

THE defendant was convicted of murder by poisoning, and from the judgment entered he appeals.— *Affirmed.*

*V. R. McGinnis, C. W. Hoffman,* and *M. L. Temple,* for appellant.

*C. W. Mullan,* Attorney General, and *Lawrence De Graff,* Assistant Attorney General, for the State.

BISHOP, J.— The deceased was the wife of the defendant. The State relied for a conviction upon circumstantial evidence, and one of the circumstances was that defendant held a policy of insurance on the life of his wife. It was conceded that a policy had been issued payable to defendant as beneficiary, and that such policy was in his possession at the time of the death of his wife. A. R. Shrimplin, agent of the insurance company, as a witness for the State, testified to the issuance of the policy, and the giving of a premium note in consideration thereof, and that subsequent to the death of Mrs. Woodard he returned such premium note to defendant, and took up the policy. Without objection the witness further stated that as far as he knew the policy was in force from the time of its issuance until it was taken up. On cross-examination the witness was asked if at some time he had not been notified by his company that the policy was void. To this an objection was interposed and sustained, and the ruling is assigned as error. As the ruling was put upon the express ground that the question was not limited to the time before the death of Mrs. Woodard we think there was no error. If the subject-matter was of any materiality whatsoever, it was of no moment to inquire what attitude the company assumed after the death of the insured; and, following the ruling, counsel did not see fit to limit his question to conform thereto.

A further witness for the State, C. B. Townsend, testi-

1. EXAMINATION OF WITNESSES: indefiniteness as to time.

fied that as local agent for the insurance company he made delivery of the policy on the life of Mrs. Woodard. On cross-examination the witness was asked if Mrs. Woodard had not stated at the time of delivery that she would not accept the policy unless an additional policy for which she had made application was issued and delivered to her. The question was ruled out on objection, and of this defendant complains as error. Turning over the page of the abstract we find that in answer to a further question by counsel the witness testified to the very fact called for by the question ruled out. The error in the ruling, if any, was therefore not prejudicial.

*2. EXCLUSION OF EVIDENCE: harmless error.*

It was the theory of the State that Mrs. Woodard died of strychnine poisoning. One witness for the State was permitted over objection to testify that some two years before the crime alleged the defendant had told her that he had strychnine in his possession, and that he always kept it on hand. Another witness was permitted to testify that in the year 1900 defendant had told him that he had strychnine in his possession, and that he displayed the package. It is insisted by counsel that such testimony should have been excluded because of the remoteness of the time referred to. We think otherwise. The lapse of time had bearing only on the weight to be given the testimony, and that was a subject for the consideration of the jury.

*3. EVIDENCE: remoteness.*

The defendant called as a witness his son, 16 years of age. It appears that such witness had been called before the grand jury and had there testified, but his name was not indorsed on the indictment nor was his testimony returned therewith. On cross-examination of the witness the county attorney sought to show that the testimony given by him on one point was at variance with what he had testified to when before the grand jury. And in connection therewith the attorney produced a typewritten document from which he read what purported to

*4. IMPEACHMENT: use of grand jury minutes.*

be a statement of fact, and the witness was then asked if he did not testify in accordance with such statement when before the grand jury. The witness was also asked to read from the document and to say whether he had testified before the grand jury in language as contained therein. Defendant protested by objections to the character of the examination, and assigns the refusal of the court to interfere as error. Demand was also made for the right to inspect the document, and error is predicted upon the refusal of the court to order in accordance therewith. The document thus made use of is not before us. Counsel for defendant assume that it was the minutes of the evidence of the witness as taken before the grand jury, and the argument is that as such evidence could not be used for the purpose of impeachment it should not have been brought into the trial for any purpose. It is true enough that the minutes, if such was the character of the document, could not have been used for impeachment purposes. While we agree with the trial court that the examining counsel for the purpose of impeachment had the right to assail the testimony of the witness given in chief by securing from him if possible an admission of variant statements made before the grand jury or elsewhere, still as the minutes of evidence could not have been used directly, an indirect use could not have been proper. But for the purpose of framing his questions counsel might properly resort to any information at his command. And as there was no attempt to make use of the document as evidence and as the character thereof does not appear, we cannot say that there was prejudicial error. Indeed, the subject-matter to which the interrogatories related was of but little materiality; and all reference to the document used might well have been withdrawn from consideration had the defendant seen fit to move therefor, as the State rested its case without bringing forward any evidence designed to impeach the witness.

II. Several requests for instructions were presented by

defendant and refused. We shall not stop to discuss the 5. MURDER: same in detail. As far as applicable to the motive: instruction. case these were embodied in the charge as given to the jury. Complaint is also made of several of the instructions given. One of such only seems to call for special attention. A brief statement of the situation is necessary to an understanding. Evidence of the insurance policy issued on the life of Mrs. Woodard and in favor of defendant as beneficiary was introduced by the State with the avowed purpose of establishing a motive for the commission of the crime charged. It appears that defendant and his wife made application for insurance at the same time. In the application of Mrs Woodard two policies of $2,000 each were called for. But one policy was forwarded in response to her application, however, and thereof defendant and his wife went to the agent of the company and complained. Respecting this, the agent, as a witness for the State, says: " I told Mrs. Woodard (in the presence of defendant) that I would take the matter up with the company and I thought they would issue the other certificate, and for her to take what they had and keep them, and that if I was unable to procure the other certificate as I had agreed, they could then bring them back, and we would make some other arrangements in regard to taking up the note or giving them back the notes (given for premiums) and taking up the policies." In addition to this there was evidence on behalf of the State tending to prove statements made by defendant within a day or two after his wife's death to the effect that they had accepted and paid for the $2,000 policy; also statements as to his purpose in respect of the insurance money when it had been collected. As a witness on his own behalf the defendant testified that they (himself and wife) had positively refused to accept the policy sent forward by the company, and had demanded a return of his note given for the premium; that at no time did he consider the policy on the life of his wife as in force.

The thirteenth instruction was addressed to the subject of motive and therein it was said: "If the jury find that the life of the deceased was insured and payable to the defendant, Charles Woodard, and that the said defendant believed the said policy of insurance was valid and in force at the time the crime is charged to have been committed, or even if the said alleged policy of insurance was void and of no force and effect, yet if you find that the defendant thought and believed that said policy of insurance on the life of his wife was in force and valid and payable to him, then such finding by you may be considered as tending to establish a motive." The instruction is complained of as error upon two grounds: (1) The evidence shows conclusively that the policy of insurance on the life of Mrs. Woodward was not in force, and hence the subject-matter thereof was improperly submitted for the consideration of the jury. (2) The instruction improperly submitted to the jury the question of the legal effect of the conditional delivery of the policy to defendant and his wife and their retention thereof.

That the first ground of contention is untenable becomes apparent upon a moment's reflection. It was in no sense material to the issue to prove that the policy was a valid and subsisting obligation on the part of the insurer at the date of death. The subject of such policy became important only as related to the question of motive. To establish motive it was not required that the fact or state of facts involved should be proven. Belief on the part of defendant in the existence of such fact was alone essential. If therefore the defendant believed that the policy on the life of his wife was in force it was sufficient for the purposes of the case  What we have already said respecting the state of the record is sufficient to make it clear that the question of the belief of defendant respecting the validity of the policy was an open one and hence proper to be submitted to the jury. It may be added that the portion of the instruction quoted above was followed by the statement that if

defendant did not believe the policy to be in force and the
jury so found then the existence of such policy could not
be considered as having any bearing on the question of
motive  Considering that by the initial phrase of the in-
struction as quoted, the question of the validity of the policy
was submitted to the jury for a finding, and we think it
may have been so understood, still we are united in the
opinion that no prejudice could have resulted therefrom to
the defendant.  As we have seen, it was immaterial whether
or not the policy issued and which was in the hands of
defendant was a valid obligation.  It was enough that the
defendant believed or did not believe it to be valid.  Con-
ceding then, as we may, that the question of validity should
not have been submitted, it remains true that, under the
instruction as a whole, the right to consider the policy as
bearing upon motive was made to turn upon the belief of
defendant, and not upon the question of validity.  So con-
sidered no hardship to defendant was worked by requiring
the jury to determine the question of validity before passing
to the question of belief.  On the contrary, the instruction
may justly be regarded as unduly favorable to defendant.

III. The principal contention on behalf of defendant is
that the verdict was not warranted by the evidence, and this
has been earnestly and strenuously pressed upon our atten-
6. MURDER: tion both in the arguments made at the bar and
sufficiency of
evidence. those submitted in print.  The question is
one of gravest importance, and we have studied the record
with all the patience and care at our command.  In com-
mon with questions of fact generally no good purpose will
be subserved by setting forth in this opinion the evidence
in detail, and we content ourselves by saying that the con-
clusion reached in the trial court must have approval at
our hands.  As usual in such cases, the evidence was wholly
circumstantial.  The jury was warranted in finding that de-
fendant had strychnine in his possession; and that Mrs.
Woodard died from strychnine poisoning was abundantly es-

tablished.   If the witnesses for the State were to be believed, and of this the jury were to judge, there was in the unpleasant relations existing between the parties, taken in connection with the fact of the insurance policy, ample basis to support a finding for motive.   Adding now what was said and done by the defendant during the illness and subsequent to the death of his wife, and we see no escape from the conclusion that the ends of justice were reached by the verdict.   As did the learned trial judge, we refuse to interfere.

Other errors assigned have been examined and found to be without merit.

The judgment must be, and it is, *affirmed.*