PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* JOSÉ A. AYALA, Defendant and Appellant.

No. 2900.   Argued November 8, 1927.—Decided June 22, 1928.

*Pedro Baigés Gómez* and *Angel A. Vázquez* for the appellant. *José E. Figueras* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The defendant-appellant was accused as follows:

"The aforesaid defendant, José A. Ayala, during the year 1924 and in Mayagüez, which forms part of the judicial district of the same name, and being marshal of the Municipal Court of Mayagüez, among whose duties was that of receiving the amount of the judgments satisfied by defendant persons in civil cases in the said court, unlawfully, wilfully, maliciously and fraudulently appropriated to himself to the prejudice of Irene Bages a sum of money not less than three hundred dollars which had been intrusted to the defendant and received by him in his capacity as marshal for delivery to her, thus defrauding Irene Bages of that sum, all of which is contrary to the law for such case made and provided and against the peace and dignity of the People of Porto Rico."

The defendant pleaded not guilty, made several motions which were overruled and finally was brought to trial. The jury convicted him of the crime of embezzlement as charged and he was sentenced by the court to two years in the penitentiary at hard labor. He appealed from that judgment and in his brief has assigned four errors which we will examine in the order of their presentation.

The appellant contends that the court erred in not dismissing the case because the stenographic notes of the action of the grand jury had not been submitted to it prior to the arraignment.

The indictment was filed on December 26, 1924. On the 7th of the following January the defendant, under sections 30 and 31 of Act 58 of 1919 establishing the grand jury in Porto Rico, moved that the court quash the indictment because the full transcript of the stenographic notes of the action of the grand jury had not been submitted to it before January 5th when the defendant was arraigned.

It appears from the record that the prosecution objected and that the court overruled the motion "after hearing the evidence introduced and the oral argument of the parties." The evidence is not included in the record.

It is true that section 31 of the Grand Jury Act invoked provides that the stenographic transcript duly certified shall be submitted in full to the court before the arraignment, but it does not order that the case shall be dismissed when the rule is not complied with.

It appears from the motion of the appellant that he was arraigned on the 5th of January. The motion was made two days later. It does not appear that at the act of arraignment the defendant demanded strict compliance with the law. If he had, perhaps the court would have postponed the arraignment until after the transcript had been filed, but it would not have dismissed the case.

Moreover, evidence was submitted to the consideration of the court and that evidence is not included in the record. The appellant has not placed this court in the same position as the lower court, as was his duty. Nor has the appellant cited any statute which indicates the consequences of lack of strict compliance with the law in a case of this kind, or any jurisprudence on the question.

Under any aspect of considering the question it is not possible to conclude that there was an error which of itself can justify a reversal of the judgment appealed from.

One day before the trial the defendant moved that the court order the clerk to allow him to examine the stenographic transcript of the proceedings before the grand jury which was under his custody, alleging as the only ground that the clerk had refused his request because in his opinion the proceedings were secret and as a consequence of that refusal he was deprived of the right to examine the said record and· so prepare his defense at the trial.

The court heard both parties and finally overruled the motion. The appellant contends that the ruling of the court was erroneous.

At the commencement of this prosecution the Grand Jury Act of June 18, 1919, Laws of 1919, p. 302, was in full force, but in 1925 it was limited to the investigation and prosecution of felonies committed by public officers in the exercise of their duties. *People* v. *Ramos,* 36 P.R.R. 739.

Sections 2, 15, 18, 22, 27, 30, 31, 34 and 57 of the Act of 1919 read as follows:

''Section 2.—That at each judicial term, the court, whenever in its opinion the same may be necessary, shall order the drawing by lot of twenty names from the regular list of jurors for the formation of the Grand Jury to act during the term.

''Section 15.—That upon the formation of the jury with twelve or more members, the court shall designate a foreman from among their number.

''Section 18.—That the Grand Jury shall retire to the jury room and proceed to inquire into the offenses cognizable by them. On the completion of the business before them they shall be discharged by the court.

''Section 22.—That the Grand Jury shall have power to summon and examine witnesses and experts under oath; to make ocular inspections, and to compel the introduction of documentary or other evidence in addition to that offered by the *fiscal.*

''Section 27.—That the Grand Jury shall not be bound to hear the defendant nor the evidence offered by him, but they shall weigh

all the evidence submitted to them; and when they have reason to believe that other legal evidence exists within their reach which will remove the charge or explain the facts constituting the same, they may order such evidence to be produced and also examine the defendant, if he so desires, first informing him of his right to refuse to testify, and that any testimony so given may be used against him.

"Section 30.—That the sessions of the Grand Jury shall be secret. The court stenographer, or the stenographer appointed for the purpose by the court, whose remuneration shall be paid by The People of Porto Rico, may be present to take and transcribe the evidence.

"Section 31.—That the stenographic transcription shall include the names of the jurors taking part in the investigation, the evidence introduced and the decision of the complaint, and duly certified shall be submitted in full to the court before the indictment is read.

"Section 34.—That every member of the Grand Jury shall keep secret whatever may have been said during their deliberations and the manner in which he himself or his fellow-jurors may have voted; but may, however, be compelled by any court to disclose the testimony given by a witness before the Grand Jury in the two cases following:

"1. For the purpose of ascertaining whether such evidence is consistent with that given before the court.

"2. Upon the trial of the witness on a charge of perjury.

"Section 57.—That an indictment having been filed with the court by the Grand Jury, the same procedure as in the case of an information by the district *fiscal*, shall be followed subsequently as far as possible."

In the case of *People* v. *Gómez*, 33 P.R.R. 179, after transcribing sections 30, 31, 32 and 34 of the Grand Jury Act this Supreme Court said:

"While there is an opportune moment for secrecy in the grand jury proceeding, this moment passes when the indictment is filed. We shall content ourselves with a reference from Wigmore on Evidence and his citations, as follows:"

Then follows the reference which fills more than two pages and concludes as follows:

" 'There remain, therefore, on principle, no cases at all in which, *after the grand jury's functions are ended*, the privilege of the wit-

nesses not to have their testimony disclosed should be deemed to continue. This is, in effect, the law as generally accepted today. It is, however, not usually stated in such a broad form. The common phrase is that disclosure may be required *"whenever it becomes necessary in the course of justice."* Disregarding a few local exceptions, this is in practice no narrower a rule than the one above deducible from principle.' " 5 Wigmore on Evidence, par. 2362, p. 152.

And this court continued as follows:

"Section 31 is too plain for argument. The stenographer's notes are to be transmitted to the court, and therefore they may become a public document. Section 34 contemplates the appearance of one of the jurymen himself.

"States with similar laws are Iowa and Wisconsin, and their courts have spoken. *Havenor* v. *State*, 125 Wis. 444, 104 N.W. 116; *State* v. *Woodard*, 132 Iowa 675, 108 N.W. 753. The upshot of these decisions and others that we have examined is that the stenographer's notes may be used for the purposes of cross-examination; that while the document containing the stenographer's notes may not be directly offered in evidence, it can be used by the impeaching witness to refresh his recollection, and that such an impeaching witness may be the stenographer himself or one of the grand jury."

The facts in the *Gómez Case, supra,* taken from the opinion, were as follows:

"Perhaps there was some evidence from which the jury had the right to believe that Gómez lured Cambrelein down the hill to kill him, or perhaps even that Gómez went to the house of Cambrelein with that intent or reserve intent in his mind dependent upon what Cambrelein would say or do. If Gómez had such an intent in mind, a shot fired by Cambrelein would not justify a homicide .in self-defense. The principal question in this case, however, is whether the defendant at the trial was allowed all the measures that the law permits to elicit the truth from the witnesses.

"The stenographer's notes taken at the session of the grand jury were filed along with the original information and came into the possession of counsel for the defendant and were in his possession during a large part of the trial. A witness of the Government, Pericas, had testified as to the manner in which Gómez had left Cambrelein's house and as to the events prior thereto. On cross-examination he was asked the following question: 'Do you recall

whether during the investigation that was made by the grand jury in this same case, in this same room, between the 19th of November and now you testified under oath before the grand jury that Buenaventura Cambrelein from on top and Andrés Torres Gómez from below continued to discuss, but on seeing them in this state we could not hold Ventura back (*no pudimos aguantar a Ventura*)? The *fiscal* objected on the ground that no proper foundation for the question had been laid and the court overruled the objection. The witness, contemporaneously with the objection, said he did not remember. Then defendant asked whether it was that the witness did not remember giving testimony or did not remember what he said. Before this second question was put the *fiscal* moved that the first question be stricken. The court said that he would act on the motion to strike before the close of the trial, but did not. The court did not permit the second question to be answered.

"Both the district attorney and the *fiscal* of this court seemed to be under the impression that in order to confront and impeach a witness with inconsistent statements some greater specification was needed than was disclosed in the question that we have transcribed. The test would be whether the witness would readily understand the time, place and circumstances whereunder the alleged inconsistent statement was made. He was told the spot, approximately the date, and the latter was made definite by a reference to the grand jury proceedings in the same case. The witness had every opportunity to know and to understand the occasion to which reference was made and, as we find, could not fail to understand.

"The court excluded the second question on the theory, as we understand it, that the sessions of the grand jury are secret. If the court was mistaken about this the appellant was unduly limited in his cross-examination because, assuming that there was an apparent contradiction in his testimony before the grand jury and the petit jury, the appellant had a right to investigate a little further. If the witness did not remember having testified before the grand jury, this failure would impeach his memory and if he said he did not remember answering the question as put, he might still be examined as to which of the two statements was the truth and given a chance to explain. If he said he had not made the alleged impeaching statement and it was material, he could be contradicted in a proper way as we shall see hereafter. We have assumed that the original question was asked in good faith, as would be the presumption, for it would be a serious matter indeed to ask a witness about a state-

ment unless the statement was actually or apparently made before the grand jury as disclosed by the stenographer's notes. If the stenographer's notes were usable in any way the court erred in limiting the right of cross-examination. Section 2 of the Organic Act, namely, that in all criminal prosecutions the accused shall enjoy the right to be confronted with the witnesses against him. The primary idea of confrontation is the opportunity for cross-examination. Wigmore, Sec. 1398. Great liberality should be allowed in the cross-examination of a witness for the purpose of testing his accuracy or credibility, and where questions asked appear to relate to facts and circumstances within the general scope of the direct examination, it is error to exclude them. *People* v. *Westlake*, 124 Cal. 452, and other cases cited in the brief of the appellant. The court would probably not have limited the cross-examination if it had thought that counsel had a right to use the stenographer's notes in the way proposed. Of course if counsel had no right to use the notes the court did not err.

"Counsel asked generally to be allowed to use the stenographer's notes to examine the witness and the court in a reasoned order refused. This is technically not the way to obtain the use of stenographer's notes already filed and in possession of counsel, but counsel should ask questions of witnesses as was done in the case of Pericás. It should be made to appear as each witness is examined that there was some contradiction in his testimony in the court-room and in that before the grand jury. If counsel was not offering to show inconsistent statements, and especially if no one had any idea that a witness had been inconsistent in his testimony, there might be nothing in the notes of any possible benefit to court, counsel or to the investigation of the truth. Stenographer's notes may never properly be used as a sort of a club or a means of infusing dread into a witness, but they should be used solely for their legitimate purpose of laying the ground for contradiction. Nevertheless, the proper use of the stenographer's notes, supposing them to be usable, was attempted to be made in the examination of the witness Pericás and the whole case thereafter was conducted on the theory that the notes were in no way available at the trial, which attitude may have prevented an ample examination of the other witnesses as well. We shall examine the Grand Jury Law.''

Then follows the part of the opinion to which we have referred, concluding as follows:

"It follows that the court erred in limiting the scope of the cross-examination of the witness Pericás and that the court was entirely mistaken in its attitude towards the stenographer's notes."

The facts of the *Gómez Case, supra,* and those of the case before us are, therefore, different, but it must be acknowledged that if the conclusion reached by this court in the sense that when the stenographic notes are transmitted to the district court they become a public document is applied without limitation, the defendant had a clear right to examine them and it was the duty of the clerk as well as of the district court to allow him to examine them.

The statutes of the different States of the Union are not similar. There is no doubt that progress has been made in the sense of going as far as this court did in the aforesaid case of *Gómez.* After a careful analysis of the statutes of this Territory in the light of the facts of this case we are inclined to believe that the conclusion reached in the case of *Gómez* should be restricted, it being understood that it does not preclude the exercise of a sound discretion on the part of the court, although really in order to avoid difficulties and for the purpose of safe-guarding all of the legal means of defense for the protection of the defendant, that discretion should be sought to be exercised always in favor of the greatest possible publicity.

It seems well to cite the synopsis of the jurisprudence on the matter taken from Corpus Juris. It is as follows:

"In the absence of a statutory provision to that effect, defendant is not entitled, as a matter of right to have the evidence before the grand jury disclosed to him. Under some statutes, however, in addition to indorsing on the indictment the names of the witnesses testifying before the grand jury, the minutes of their testimony must be filed with the indictment, and a copy thereof must be furnished to defendant or to his counsel. But under a statute requiring the minutes of the evidence taken before the grand jury to be filed with the indictment, it is not necessary, in order that the witnesses may testify, that the minutes shall be attached to the indictment if they are sufficiently identified. Letters or other docu-

ments may be introduced in evidence without being referred to in the minutes; but it has been held that, where complicated books of accounts are taken from defendant by the prosecuting attorney, to be used as evidence against him, defendant is entitled to inspect the same in order to enable him to prepare his defense.

"  *  *  *  *  *  *  *

"Leave to examine the minutes of the grand jury is not a matter of right, but whether defendant shall be permitted so to do is in the discretion of the court, since the general policy of the law is to keep proceedings before a grand jury secret; and this rule applies whether or not there has been a preliminary examination.

"Leave to inspect the minutes of the grand jury may be granted defendant for the purpose of moving to set aside the indictment upon one or more of the following grounds: That it is not properly found, indorsed, and presented, or that an improper person was present during the session of the grand jury; that defendant's constitutional rights have been invaded; or where it otherwise appears to be necessary in order to promote justice and protect the rights of defendants. It has been held that an inspection may be granted in order to enable defendant to prepare for trial; but, on the other hand, it has been held that an inspection will not be granted for such a purpose. It has been held also that such leave will not be granted on the ground that the indictment was found on insufficient evidence; or where defendant sets up, as a ground for his motion, a matter which merely amounts to a defense; or where the only result would be to place the state's evidence in the hands of defendant.

"The motion for such leave must show that the grounds therefor actually exist, or facts from which good grounds may be inferred, and must advance some sufficient reason for believing that the minutes, if inspected, will reveal grounds for granting the motion to dismiss the indictment." 16 C. J. 801, 802.

It is clear that the jurisprudence is based on the law. Hence it establishes various rules because there are many laws. The rule that the testimony be taken by a stenographer is not imperative. But when it is taken it should be transmitted to the court before the arraignment. "Shall be submitted in full to the court" are the words of the English text of the statute. Laws of 1919, p. 310. It is natural that that should be done. The grand jury functions temporarily. The

court is always in action. It is the court which convenes the grand jury and finally receives the result of its work. If it is intended to protect the witnesses, the. protection would not be really effective unless it is extended until the moment of the trial. A fundamental right of the defendant is not involved. The essential right of the defendant consists in his being confronted by the witnesses for the prosecution and he has that fully at the time of the trial.

The law of Porto Rico does not go as far, for example, as that of Iowa. Section 5276 of the Codes of that state expressly provides that the indictment and the minutes shall be filed with the clerk and shall remain in his office as a part of the record. It is also expressly provided by the law of that state that the defendant shall be given a copy not only of the indictment, but also of the minutes. Section 5277 of the Codes. *State* v. *McClain*, 130 Iowa, 73, 77.

Our statute only orders that the transcript shall be transmitted or submitted to the court. Should this provision be construed in the sense of depriving the court of all discretion in regard to its use? In our opinion everything may be harmonized so as to comply with the statement of Wigmore to be found in the quotation from the case of *Gómez*, namely; "The common phrase is that disclosure may be required *'whenever it becomes necessary in the course of justice,'* " as apparently resulted in the *Gómez Case, supra.*

In the concrete case now submitted to our consideration we know the only reason alleged for requesting the inspection and we know that the district court made its ruling after having heard both parties in oral argument. There is nothing to induce us to believe that it abused its discretion. However, for ulterior cases we desire to remember what we have stated above, *i. e.*, that the court should endeavor to exercise always its discretion in favor of the accused so as to secure to him the greatest opportunities of defense.

But admitting that in accordance with the law and the doctrine in the *Gómez Case* applied without restrictions the

conclusion should be reached that the court erred, was its error prejudicial?

There is nothing in the record to show it. The case was called for trial on the day following the presentation of the motion. The judge asked the parties if they were ready. The prosecution answered in the affirmative and counsel for the defense said:

"Your Honor, we can not announce that we are ready because we have moved for dismissal of the case . . ."

No reference was made to his motion for leave to examine the minutes. And so the case went to trial and he cross-examined amply the witnesses for the prosecution and made motions and objections revealing full knowledge of the facts without in any way suggesting the least obstacle to his defense that might be based on the lack of knowledge of any statements made by the witnesses for the prosecution before the grand jury.

Under these circumstances, even admitting the error, as it was not prejudicial, it could not carry with it a reversal of the judgment.

The third assignment referring to dismissal because the trial was not held within the one hundred and twenty days fixed by law is agreed to by the *fiscal*. However, a careful study of the record convinces us that error was not proved.

When the case was called for trial the prosecuting attorney announced that he was ready. Counsel for the defense said:

"Your Honor, we can not announce that we are ready because we have moved for the dismissal of the case . . . we are going to make the following proposition to the district attorney: Does he admit the truth of the questions of fact alleged in this motion? (The facts were that the indictment had been indorsed by the grand jury on December 26, 1924, and the trial of the case was set for May 21, 1925, and the trial had not been postponed previously on motion of the defendant.)

The court then said:

"This trial was postponed on motion of the district attorney which was opposed by the defense, and the court understood that the district attorney had just cause for the postponement of the case and granted his motion."

The district attorney then said that he admitted the truth of the facts alleged in the motion to dismiss, adding that the trial was set for March 18, 1925, that he moved for the postponement "on the grounds herein stated and that the motion to postpone be made a part with the ruling of Your Honor and the setting made by Your Honor, and the order granting the postponement be made a part of the incident of the motion to postpone." The judge asked counsel for the defense: "Is there any objection?" and counsel replied: "None whatever." The court ruled: "Let all that appear in the record." Counsel for the defendant then moved to put also on record that he had objected to the motion and excepted to the ruling on the motion to postpone "because nothing is said in the record regarding the justification for the delay, and because in our opinion the fact of the postponement of the trial does not interrupt in any manner the period of one hundred and twenty days to which the defendant is entitled."

The first setting, that is the setting for March 18, was within the one hundred and twenty days; the second, that is, that for May 21, exceeded the limit fixed by the statute by nearly a month. That is evident.

Now, what is the effect of the postponement moved for and obtained by the district attorney?

In our judgment it all depends on whether or not the postponement was justified and on the subsequent acts of the court. If there was just cause, the right of the defendant succumbs to the reality of the facts. And if the court made the new setting within a reasonable time, the statute was duly complied with.

Neither the motion to postpone nor the ruling of the court thereon appears from the transcript of the record, as should

have been the case. The just cause arose, according to the prosecuting attorney and the court, from those documents. Such being the case, the presumption that the ruling of the judge was correct has not been destroyed by the appellant.

The theory of the defendant is that, notwithstanding the postponement, the trial should have been set necessarily within the one hundred and twenty days. What we hold is that when the court has done its duty by setting the trial within the statutory time and the trial is postponed for just cause on motion of the district attorney, although the court should always endeavor to make a new setting within the remainder of the term, if it does not and is justified by the concurring circumstances, the case should not be dismissed.

The fourth error is not properly assigned. There seems to be a sufficient answer thereto in the statement made by the *fiscal* of this court in his brief, as follows:

"At the end of his brief the appellant alleges certain error which is not specifically mentioned when making the assignment of errors, but which he discusses, alleging that several government witnesses were introduced whose names had not been endorsed on the indictment and that that evidence was a surprise to the defendant who had no opportunity to defend against witnesses who did not appear from the indictment.

"We do not deem it necessary to argue before this Court to the effect that there is no ground for a reversal of the judgment in the fact that The People introduced witnesses whose names had not been endorsed on the indictment. People v. Alméstica, 18 P.R.R. 314; People v. Román, 18 P.R.R. 217."

The judgment appealed from should be affirmed.

Mr. Justice Hutchison concurred.

Mr. Justice Aldrey concurred in the judgment and in the opinion with the exception of the first part of the discussion on the second assignment.

Mr. Justice Wolf dissented.

Mr. Justice Texidor took no part in the decision of this case.

DISSENTING OPINION OF MR. JUSTICE WOLF.

In the case of *People* v. *Gómez,* 33 P.R.R. 179, it was clearly decided that the notes taken at a session of the grand jury when transmitted to the court became a public document. In other words, as set forth in the opinion, after the sessions of the grand jury are over the reasons for secrecy have ceased, the Legislature has recognized that no further secrecy is necessary and has made the stenographic notes a public document.

In the opinion of the court in the present case a citation is made from 16 Corpus Juris to the effect that the notes of the grand jury may be made public at the discretion of the court, but the citation of cases from the text show definitely, I think, that this rule exists only in the absence of a statute. The rule of the common law or of states that have no statute similar to our own could not prevail over the will of the Legislature of Porto Rico as expressed in the grand jury law. To say that a discretion remains in the court is to recur to a situation that existed at common law or in the states that have followed the common law, and to put an element in the law that the Legislature did not place there. When the notes become a public document, as we have interpreted the law, no more discretion is left in the court than would exist for a complaint or an answer. Neither the judge nor the clerk can change the character of a public document and subject it to the discretion of either. This court necessarily had a serious doubt and reading the opinion of the majority, especially as in this part of the reasoning not all the judges concurred, I should not say that the case of *People* v. *Gómez* has been overruled.

The point on which the other three judges concurred was that the defendant suffered no prejudice. Where a defendant is deprived of an opportunity for cross-examination to show inconsistencies in the statements of the witnesses against him a prejudice arises. In the *Gómez Case,* to be sure, the defendant already had the grand jury notes in his possession,

but whether or not an inconsistency existed was not revealed. The lack of opportunity for cross-examination was the fundamental reason for the reversal in that case. The defendant did not have the opportunity in the present case.

The majority opinion says that there was nothing in the record to show prejudice. Naturally so. A defendant would never be able to show prejudice if he is given no opportunity to examine the notes of the grand jury, if they are withheld from him by the orders of the court. My time for writing dissenting opinions is limited, and I shall not look up the authorities (probably some in this court), but it seems to me from my recollection that the rule is that prejudice in a criminal case is generally presumed from the commission of an error and the lack of prejudice must be shown from the record or from some special circumstances in the case.

For these reasons I dissent from the opinion of the court.