EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ A. AYALA, acusado y apelante.

No. 2900.—*Visto:* Noviembre 8, 1927. *Resuelto:* Junio 22, 1928.

*Pedro Baigés Gómez* y *Angel A. Vázquez,* abogados del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El cargo que se imputa al acusado y apelante es como sigue:

"El referido acusado José A. Ayala, durante el año 1924, y en Mayagüez, que forma parte del distrito judicial del mismo nombre, y en ocasión de ser Marshal de la Corte Municipal de Mayagüez, siendo sus deberes como tal Marshal, entre otros, recibir el importe de las sentencias satisfechas por las personas demandadas en los procedimientos civiles, de la referida Corte, de una manera ilegal, voluntaria, maliciosa y fraudulentamente, se apropió en su beneficio y con perjuicio de Irene Bages, de una cantidad de dinero no menor de trescientos dólares, y la cual había sido confiada al acusado y recibida por él, en el curso de sus deberes como tal Marshal para ser entregados a dicha señora, defraudando de esta manera de dicha cantidad a Irene Bages, todo lo cual es contrario a la ley para tal caso hecha y prevista y contra la paz y dignidad de El Pueblo de Puerto Rico."

Alegó el acusado su inocencia, presentó varias mociones que fueron declaradas sin lugar y sometido finalmente a juicio, el jurado lo declaró culpable del delito de abuso de confianza imputádole y la corte lo condenó a sufrir dos años de presidio con trabajos forzados. No conforme con la sentencia, apeló, señalando en su alegato la comisión de cuatro errores que examinaremos en el orden en que lo han sido.

██ Sostiene la parte apelante que la corte erró al no decretar el archivo de la causa por no haberse trasmitido a la misma la transcripción de las notas taquigráficas de las actuaciones del gran jurado, con anterioridad a la lectura de la acusación.

La acusación se radicó el 26 de diciembre de 1924. El 7 de enero siguiente el acusado, fundándose en las secciones 30 y 31 de la ley No. 58 de 1919, estableciendo el gran jurado en Puerto Rico, presentó una moción pidiendo a la corte que decretara el archivo de la acusación radicada por no haberse remitido la transcripción íntegra de las notas taquigráficas de las actuaciones del gran jurado, antes del día 5 de enero en que se leyó la acusación.

Consta de los autos que el fiscal se opuso y que la corte declaró sin lugar la moción "después de oír la evidencia introducida y los argumentos orales de las partes." La evidencia no se incluye en el récord.

Es cierto que la sección 31 de la Ley del Gran Jurado que se invoca dice que la transcripción se trasmitirá íntegra a la corte debidamente certificada antes de la lectura de la acusación, pero no ordena que la causa se sobresea y archive cuando no se cumple con la regla.

De la misma moción del apelante consta que la acusación se leyó el 5 de enero. La moción se presentó dos días después. No aparece que el acusado en el acto de la lectura exigiera el cumplimiento estricto de la ley. Si lo hubiera exigido, quizá la corte hubiera pospuesto la lectura hasta que la transcripción se hubiera archivado, pero nunca hubiera decretado su sobreseimiento.

Además, se presentó prueba a la consideración de la corte y esa prueba no se incluye en el récord. El apelante no ha colocado a esta corte en las mismas condiciones en que se encontraba la corte inferior, como era su deber. Tampoco cita el apelante precepto de ley alguno que indique las consecuencias de la falta de cumplimiento estricto de la ley en un caso como éste, ni jurisprudencia sobre el particular.

Bajo cualquier aspecto que la cuestión levantada se considere, no es posible llegar a la conclusión de que se trata de un error que pueda por sí solo producir la revocación de la sentencia apelada.

 Un día antes del juicio el acusado presentó a la corte una moción solicitando que ordenara al secretario de la misma que le permitiera examinar la transcripción taquigráfica de los procedimientos que tuvieron lugar ante el gran jurado y que se encontraban bajo la custodia de dicho funcionario, alegándose como único fundamento que el secretario se había negado a ello por estimar secretos dichos procedimientos y a consecuencia de tal negativa se veía privado del

derecho de examinar dicho récord y de esa manera prepararse para su defensa en el juicio.

La corte oyó a ambas partes y declaró finalmente la moción sin lugar. La parte apelante sostiene que la resolución de la corte fué errónea.

Cuando esta causa se inició regía aún en toda su extensión la Ley del Gran Jurado aprobada el 18 de junio de 1919, Leyes de 1919, pág. 303, limitada luego, en 1925, a la investigación y persecución de delitos graves realizados por funcionarios públicos en el ejercicio de sus funciones. *El Pueblo* v. *Ramos*, 36 D.P.R. 821, 823.

Las secciones 2, 15, 18, 22, 27, 30, 31, 34 y 57 de la ley de 1919, dicen:

"Sección 2.—En cada término judicial la corte, siempre que fuere a su juicio necesario, ordenará la extracción por suerte de veinte nombres de la lista ordinaria de jurados, para que formen el Gran Jurado que ha de actuar durante el término.

"Sección 15.—Constituido que sea el jurado con doce o más miembros, la corte designará de entre ellos un presidente.

"Sección 18.—El Gran Jurado deberá retirarse al salón de jurados y proceder a la investigación de los delitos de su competencia. Al terminar sus funciones será disuelto por la corte.

"Sección 22.—El Gran Jurado tendrá facultad para citar testigos y peritos y para examinarlos bajo juramento; para hacer inspecciones oculares y compeler la presentación de evidencia documental o de cualquier otra clase, además de la ofrecida por el fiscal.

"Sección 27.—El Gran Jurado no estará obligado a oir al acusado ni la evidencia que éste ofrezca; pero debe pesar toda la que se le someta; y, cuando en su opinión, exista otra evidencia legal, a su alcance, que pueda destruir el cargo o explicar los hechos que lo constituyen, podrá ordenar que se produzca tal evidencia, y también examinar al acusado, si éste lo deseare después de advertido de su derecho de abstenerse de dar testimonio y de que el que diere podrá ser utilizado en su contra.

"Sección 30.—Las sesiones del Gran Jurado serán secretas. El taquígrafo de la corte o un taquígrafo designado al efecto por la corte, con cargo a El Pueblo de Puerto Rico, podrá estar presente en las sesiones para tomar la prueba y transcribirla.

"Sección 31.—En la transcripción taquigráfica se consignarán

los nombres de los jurados que intervengan en la investigación, la prueba aducida y resolución de cada cargo, y se trasmitirá íntegra a la corte debidamente certificada antes de la lectura de la acusación.

"Sección 34.—Todo miembro del Gran Jurado debe guardar secreto acerca de cuanto se haya dicho en las deliberaciones de éste y de la manera como hayan votado él o sus colegas; pero cualquier corte puede compelerle a descubrir el testimonio prestado por un testigo ante el Gran Jurado en los dos casos siguientes:

"1. A los efectos de juzgar si dicho testimonio es consistente con la declaración prestada ante dicha corte.

"2. En el juicio de una acusación por perjurio contra el testigo.

"Sección 57.—Presentada que sea una acusación del Gran Jurado ante la corte se seguirán en lo sucesivo en cuanto sea posible los mismos procedimientos que si se tratara de una acusación del fiscal del distrito."

Esta Corte Suprema en el caso de *El Pueblo* v. *Torres Gómez,* 33 D.P.R. 185, 190, después de transcribir las secciones 30, 31, 32 y 34 de la Ley del Gran Jurado, dijo:

"Aunque hay un momento oportuno para guardar secreto en el procedimiento del gran jurado, este momento pasa al formularse la acusación (*indictment*). Nos limitaremos a hacer una referencia de de Wigmore sobre Evidencia y sus citas a saber:"

Sigue la referencia que ocupa más de dos páginas terminando así:

"No quedan por tanto, en principio, ningunos casos en los cuales *después que las funciones del gran jurado han terminado,* el privilegio de los testigos a que sus declaraciones no sean reveladas, debe considerarse que continúa. Esta es, en efecto, la ley que ha sido aceptada hoy generalmente. Sin embargo, no ha sido ordinariamente expuesto en una forma tan amplia. La frase corriente es que la divulgación puede ser necesaria '*siempre que resulte necesaria en el curso de la justicia.*' Haciendo caso omiso de algunas excepciones locales, en la práctica ésta no es una regla más estricta que la antes referida inferible del principio." 5 Wigmore sobre Evidencia, párrafo 2362, pág. 152.

Y continuó esta corte:

"El art. 31 es demasiado claro para ser discutido. Las notas taquigráficas deben ser trasmitidas a la corte y por tanto se convierten en un documento público. El art. 34 tiene por fin la comparecencia de uno de los mismos jurados.

"Iowa y Wisconsin son Estados que tienen leyes semejantes y sus cortes han hablado. *Havenor* vs. *State,* 125 Wis. 444, 104 N. W. 116; *State* vs. *Woodward,* 132 Iowa, 675, 108 N. W. 753. El resultado final de estas decisiones y otras que hemos examinado es que las notas taquigráficas pueden ser usadas para fines de repreguntas: que aunque el documento que contiene las notas taquigráficas no puede ser ofrecido directamente como prueba puede ser usado por el testigo cuya declaración se impugna para refrescar su memoria, y que tal testigo puede ser el mismo taquígrafo o un miembro del gran jurado."

Los hechos ocurridos en el caso de *Torres Gómez, supra,* tomados de la opinión, fueron:

"Tal vez hubo alguna prueba de la cual el jurado tenía derecho a creer que Gómez indujo a Cambrelein a bajar la cuesta para matarlo o quizás hasta que Gómez fué a la casa de Cambrelein con esa intención o idea reservada en su mente sujeta a lo que Cambrelein dijera o hiciera. Si Gómez tuvo tal intención en su mente un disparo hecho por Cambrelein no justificaría un homicidio en defensa propia. La cuestión principal en este caso, sin embargo, es si al acusado se le permitió en el juicio utilizar todos los recursos que la ley permite para sacar la verdad de los testigos.

"Las notas taquigráficas tomadas en la sesión del gran jurado fueron archivadas con la acusación original y llegaron al poder del abogado del acusado en cuyo poder estuvieron durante gran parte del juicio. Un testigo del gobierno, Pericás, había declarado respecto a la forma en que Gómez salió de la casa de Cambrelein y en cuanto a los sucesos anteriores a esto. En el examen de repreguntas se le preguntó lo siguiente: '¿Ud. recuerda si durante la investigación que hizo el gran jurado en este mismo caso, en este mismo salón, entre el 19 de noviembre y ahora Ud. declaró bajo juramento ante el gran jurado que Ventura Cambrelein desde arriba y Andrés Torres Gómez desde abajo continuaron discutiendo, pero al verles a ellos en este estado no pudimos aguantar a Ventura?' El fiscal se opuso por el fundamento de que no se había establecido la debida base para la pregunta y la corte desestimó la objeción. El testigo al mismo tiempo de hacerse la objeción dijo que no re-

cordaba. El acusado entonces preguntó si era que el testigo no recordaba haber prestado la declaración o no recordaba lo que dijo. Antes de haberse hecho esta segunda pregunta el fiscal solicitó que la primera fuera eliminada. La corte manifestó que resolvería la moción de la eliminación antes de terminarse el juicio pero no lo hizo. La corte no permitió que la segunda pregunta fuera contestada.

"Tanto el fiscal de la corte inferior como el de esta corte parecen estar bajo la impresión de que para poder confrontar e impugnar a un testigo con manifestaciones inconsistentes era necesaria mayor especificación que la que aparecía de la pregunta que hemos transcrito. La norma sería ver si el testigo fácilmente entendería la fecha, lugar y circunstancias por virtud de las cuales la alegada manifestación inconsistente se hizo. Se le dijo el lugar, aproximadamente la fecha, y la última se precisó haciendo una referencia a los procedimientos del gran jurado en el mismo caso. El testigo tuvo todas las oportunidades para conocer y entender la ocasión a que se hizo referencia, y según creemos no podía dejar de entenderla.

"La corte excluyó la segunda pregunta basada en la teoría, según entendemos, de que las sesiones del gran jurado son secretas. Si la corte estuvo equivocada en esto, el apelante fué limitado indebidamente en su examen de repreguntas porque asumiendo que hubo una contradicción aparente en su declaración ante el gran jurado y el pequeño jurado el apelante tenía derecho a investigar un poco más. Si el testigo no recordaba haber declarado ante el gran jurado, esta falta impugnaría su memoria y si él dijo que no recordaba haber contestado la pregunta como se le hizo, todavía podría ser interrogado con respecto a cuál de las dos manifestaciones era verdad y habérsele dado una oportunidad de explicar. Si él dijo que no había hecho la alegada manifestación que se impugna, y era esencial, pudo haber sido contradicho en debida forma como luego veremos. Hemos asumido que la pregunta original se hizo de buena fe, como sería la presunción, pues en verdad sería cosa muy grave preguntar a un testigo acerca de una manifestación, a menos que la manifestación real o aparentemente hubiese sido hecha ante el gran jurado como lo revelan las notas taquigráficas. Si las notas taquigráficas podían usarse de algún modo, la corte incurrió en error al circunscribir el derecho a hacer repreguntas. Artículo 2 de la Ley Orgánica, a saber, que en todos los procesos criminales el acusado gozará del derecho de carearse con los testigos de cargo. La idea principal del careo es la oportunidad para hacer repregun-

tas. Wigmore, Sec. 1398. Debe permitirse gran liberalidad en el examen de repreguntas de un testigo, con el fin de poner a prueba su exactitud o credibilidad, y cuando las preguntas hechas parecen referirse a hechos y circunstancias dentro del alcance general del interrogatorio directo, se comete error al excluirlas. *People* vs. *Westlake*, 124 Cal. 452, y otros casos citados en el alegato del apelante. La corte probablemente no hubiera limitado el examen de repreguntas si hubiera creído que el abogado tenía derecho a utilizar las notas taquigráficas en la forma propuesta. Desde luego que si el abogado no tenía derecho a usar las notas la corte no incurrió en error.

"El abogado solicitó en términos generales que se le permitiera usar las notas taquigráficas para interrogar a los testigos y la corte en una orden razonada lo negó. Técnicamente éste no es el modo de obtener el uso de las notas taquigráficas ya archivadas y en poder del abogado, pero el abogado debe hacer preguntas a los testigos como se hizo en el examen del testigo Pericás. Debe hacerse constar, a medida que se examine cada testigo, que hubo alguna contradicción en su declaración en el salón de la corte y ante el del gran jurado. Si el abogado no estaba tratando de ofrecer manifestaciones inconsistentes, y especialmente si nadie tenía ninguna idea de que un testigo había sido inconsistente en su declaración, nada podría haber en las notas taquigráficas de ningún beneficio posible para la corte, el abogado, o la investigación de la verdad. Las notas taquigráficas nunca pueden ser usadas debidamente como un instrumento o medio de infundir temor a un testigo, sino que deben ser utilizadas únicamente con su fin legítimo de establecer la base de la contradicción. Sin embargo el uso debido de las notas taquigráficas, suponiéndose que pueden usarse, se pretendió hacer en el interrogatorio del testigo Pericás y todo el caso después fué seguido por virtud de la teoría de que las notas de modo alguno no puedan utilizarse en el juicio, cuya actitud puede también haber impedido un interrogatorio amplio de los demás testigos. Examinaremos la ley del gran jurado."

Sigue entonces la parte de la opinión a que hicimos referencia anteriormente y termina:

"Resulta, pues, que la corte incurrió en error al limitar el alcance del examen de repreguntas del testigo Pericás y que la corte estuvo enteramente equivocada en su actitud hacia las notas taquigráficas."

(*a*) Los hechos del caso de *Torres Gómez, supra,* y los de éste que estamos resolviendo, son, pues, distintos, pero es necesario reconocer que si la conclusión a que llegó esta Corte Suprema en el sentido de que al trasmitirse las notas taquigráficas a la corte de distrito se convierten en un documento público se aplica sin limitaciones, el acusado tenía un claro derecho a examinarlas y el secretario y la corte de distrito estaban en el deber de permitirle el examen.

Las leyes de los diferentes estados de la Unión sobre la materia, no son iguales. No hay duda alguna que se ha ido avanzando en el sentido de llegar al límite a que llegó esta corte en el repetido caso de *Torres Gómez.* Analizando cuidadosamente toda la ley de este territorio a la luz de los hechos de este caso nos inclinamos a creer que la conclusión a que llegáramos en el de *Torres Gómez* debe limitarse entendiéndose que no excluye el ejercicio de una sana discreción por parte de la corte, aunque en verdad en evitación de dificultades y con el propósito de garantizar al acusado todos sus medios legales de defensa, esa discreción debe procurarse que se ejerza siempre en pro de la mayor publicidad que sea posible.

Parece conveniente citar el resumen de la jurisprudencia sobre la materia. Lo tomamos de Corpus Juris. Es así:

"En ausencia de disposición estatutoria al efecto, el acusado no puede, como cuestión de derecho, hacer que la prueba presentada al gran jurado le sea mostrada. Sin embargo, de acuerdo con algunos estatutos, además de hacerse constar en la acusación el nombre de los testigos que declaren ante el gran jurado, la transcripción taquigráfica de sus declaraciones debe ser radicada con la acusación y suministrársele copia al acusado o a su abogado. Pero de acuerdo con un estatuto que exija que la transcripción de la evidencia tomada ante el gran jurado sea radicada con la acusación, no es necesario, con el fin de que los testigos puedan declarar, que tal transcripción se anexe a la acusación, si es debidamente identificada. Pueden presentarse como prueba cartas u otros documentos sin necesidad de hacer referencia a ellos en la transcripción; pero se ha resuelto que cuando el fiscal toma libros de cuentas complicados de

manos del acusado, para usarlos como prueba contra éste, el acusado tiene derecho a inspeccionarlos a fin de que tenga oportunidad de preparar su defensa.

\* \* \* \* \* \* \*

"El permiso para examinar las minutas del gran jurado no es un privilegio de derecho y si al acusado ha de permitírsele o no que lo haga descansa en la discreción de la corte, pues la política general de la ley es conservar secretos los procedimientos ante un gran jurado.

"El permiso para inspeccionar las minutas del gran jurado puede ser concedido al acusado con el fin de presentar una moción para anular la acusación por uno o más de los siguientes fundamentos: Que no está propiamente formulada, endosada y presentada, o que una persona que no debía estar presente durante la sesión del gran jurado se encontraba allí; que los derechos constitucionales del acusado han sido violados; o cuando en alguna otra forma resulta necesario para los fines de la justicia y para proteger los derechos del acusado. Se ha resuelto que una inspección puede ser concedida para permitir al acusado prepararse para el juicio; pero también se ha resuelto, por el contrario, que una inspección no puede ser permitida con tal fin. Ha sido decidido además que tal permiso no será concedido por el fundamento de que la acusación fué declarada fundada sin que la evidencia fuera suficiente; o cuando el acusado alega como fundamento de su moción algo que meramente constituye una defensa; o cuando el único resultado habría de ser colocar la prueba del gobierno en manos del acusado.

"La moción pidiendo tal permiso debe demostrar que los motivos para que se conceda el mismo existen en realidad, o contener hechos de los cuales buenos motivos puedan deducirse, y debe anticipar alguna razón suficiente para creer que las minutas, de ser inspeccionadas, habrían de revelar motivos suficientes para conceder la moción para anular la acusación." 16 C. J. 801, 802.

Claro es que la jurisprudencia está basada en la ley. De ahí los varios principios que establece porque son varias las leyes. El que las declaraciones se tomen por un taquígrafo no es imperativo. Pero cuando se toman deben trasmitirse a la corte antes de la lectura de la acusación. "Shall be submitted in full to the court," dice el texto inglés de la ley. Leyes de 1919, p. 310. Es natural que así se haga.

El gran jurado funciona temporalmente. Es la corte la que siempre permanece en pie. Es ella la que convoca al gran jurado y la que recibe finalmente el resultado de su labor. Si se intenta proteger a los testigos, la protección no sería en verdad efectiva si no se extiende hasta el momento del juicio. No se trata de un derecho fundamental del acusado. El derecho fundamental del acusado consiste en confrontarse con los testigos de la acusación y ése lo tiene íntegro en el momento del juicio.

La Ley de Puerto Rico no va tan lejos, por ejemplo, como la de Iowa. La sección 5276 de los códigos de este estado expresamente dispone que la acusación y las notas se archivarán con el secretario y permanecerán en su oficina como parte del récord. También se dispone expresamente por la ley de dicho estado que se dará al acusado copia no sólo de la acusación, si que también de las notas. Sección 5277 de los códigos. *State* v. *McClain,* 130 Iowa 73, 77.

Nuestra ley sólo ordena que las notas se trasmitan o se sometan a la corte. ¿Debe esta disposición interpretarse en el sentido de despojar a la corte de toda discreción en cuanto al uso de las mismas? A nuestro juicio todo puede armonizarse a fin de que quede cumplido lo que expresa el propio Wigmore en la cita del caso de *Torres Gómez,* a saber: ''La frase corriente es que la divulgación puede ser necesaria *'siempre que resulte necesaria en el curso de la justicia,' ''* como al parecer resultó en el caso de *Torres Gómez, supra.*

Aquí, en este caso concreto sometido a nuestra consideración, conocemos la única causa alegada para pedir la inspección y sabemos que la corte de distrito dictó su resolución después de haber oído los argumentos orales de ambas partes. Nada induce a creer que abusara de su discreción. Sin embargo, para ulteriores casos deseamos recordar lo que dejamos expuesto, a saber: que la corte debe tratar de ejercer siempre su discreción en favor del acusado a fin de asegurar a éste las mayores oportunidades de defensa.

(*b*) Pero aceptando que de acuerdo con la ley y la doctrina del caso de *Torres Gómez* aplicada sin restricciones, debiera concluirse que la corte erró, ¿fué su error perjudicial?

Nada hay en los autos que lo demuestre. Al día siguiente de presentada la moción se llamó la causa para la vista. Preguntó el juez a las partes si estaban listas. Contestó afirmativamente el fiscal y la defensa dijo:

"Nosotros, señor Juez, no podemos anunciar que estamos listos puesto que hemos presentado una moción solicitando el sobreseimiento y archivo del caso . . . ."

Ninguna referencia hizo a su moción sobre examen de las notas. Y así entró a juicio, y repreguntó ampliamente a los testigos del fiscal y formuló mociones y objeciones reveladoras de un conocimiento pleno de los hechos sin que en modo alguno surgiera el menor obstáculo para su defensa que pudiera estar basado en la falta de conocimiento de lo que pudieron haber declarado los testigos de cargo ante el gran jurado.

Bajo esas circunstancias, aunque se reconociera la existencia del error, no siendo perjudicial no llevaría consigo la revocación de la sentencia.

■ Al tercer error, que se refiere al sobreseimiento por no haberse celebrado el juicio dentro de los ciento veinte días que marca la ley, se allana el fiscal. Eso no obstante, un estudio detenido de los autos nos convence de que tampoco se ha probado su existencia.

Al llamarse el caso para la vista, el fiscal anunció que estaba listo. La defensa dijo:

"Nosotros, señor Juez, no podemos anunciar que estamos listos porque hemos presentado una moción solicitando el sobreseimiento y archivo del caso . . . nosotros vamos a proponer al Fiscal lo siguiente: ¿Admite que las cuestiones de hecho que alegamos en esta moción son ciertas? (Los hechos eran que la acusación había sido endosada por el Gran Jurado el 26 de diciembre de 1924 y el juicio se llamaba para celebrarse el 21 de mayo de 1925, sin que su celebración hubiera sido suspendida antes a petición del acusado).

Entonces la corte se expresó así:

"Este juicio fué suspendido a moción del Fiscal a la cual se opuso la defensa, y la corte entendió que el Fiscal tenía justa causa para la suspensión del caso y accedió a la suspensión solicitada por el Fiscal.

Luego el fiscal manifestó que aceptaba la certeza de los hechos alegados en la moción de sobreseimiento haciéndose constar además que la vista fué señalada para el 18 de marzo de 1925, que el fiscal solicitó la suspensión "por los motivos que aquí constan y que la moción de suspensión se haga parte con la resolución de V. H. y el señalamiento hecho por V. H., y la orden de suspensión se haga parte del incidente sobre la moción de suspensión." El juez preguntó al defensor: "¿Hay oposición?" y el defensor contestó: "En absoluto." La corte resolvió: "Que se haga constar todo eso." Pidió entonces la defensa que se hiciera constar también que se había opuesto a la moción de suspensión del fiscal y había tomado excepción a la resolución así: "porque no se hace constar del récord en qué consiste la justa causa para la demora, y porque entendemos que el hecho que se haya suspendido el caso no interrumpe en forma alguna el término de ciento veinte días a que tiene derecho el acusado."

El primer señalamiento o sea el hecho para el 18 de marzo estaba dentro de los ciento veinte días, el segundo, o sea el hecho para el 21 de mayo rebasó el límite fijado por la ley en cerca de un mes. Esto es claro.

Ahora bien, ¿qué efecto produce la suspensión solicitada y obtenida por el fiscal?

A nuestro juicio depende todo de si la suspensión se debió o no a una justa causa y de la actuación posterior de la corte. Si la causa alegada era justa, cede el derecho del acusado a la realidad de los hechos. Y si la corte hizo el nuevo señalamiento dentro de un plazo razonable, cumplió debidamente la ley.

En la transcripción de los autos no aparece como debiera

la moción de suspensión ni la orden de la corte resolviéndola. De dichos documentos, según el fiscal y la corte, surgía la justa causa. Siendo ello así, la presunción de correcta que tiene la resolución del juez no ha sido destruida por el apelante.

La teoría del acusado es que necesariamente, no obstante la suspensión, la vista debió haberse señalado dentro de los ciento veinte días. Lo que decidimos es que cuando la corte ha cumplido señalando la vista dentro del plazo de ley y la vista se suspenda por justa causa a petición del fiscal, aunque la corte debe siempre tratar de hacer un nuevo señalamiento en lo que resta del término, si no lo hace y las circunstancias que concurran justifican su actuación, no procede el sobreseimiento.

El cuarto error no se señala debidamente. Parece suficiente contestación lo dicho por el fiscal de esta corte en su alegato, que es como sigue:

"El apelante, al final de su alegato, establece cierto error, que no puntualiza al hacer el señalamiento de errores, pero que discute, alegando que se presentaron varios testigos de El Pueblo que no habían sido incluidos al dorso de la acusación presentada, y que dicha prueba fué una sorpresa para el acusado, quien no tuvo la oportunidad de defensa contra testigos que no aparecían de la acusación.

"No creemos necesario hacer una extensa alegación a este Hon. Tribunal en el sentido de que no es fundamento para la revocación de la sentencia el hecho de que se presentaran por El Pueblo testigos que no aparecían de la acusación o indictment.—*El Pueblo* vs. *Alméstica,* 18 D.P.R. 321; *El Pueblo* vs. *Román,* 18 D.P.R. 219.''

*Debe confirmarse la sentencia recurrida.*

Juez concurrente: Sr. Hutchison.

El Juez Asociado Sr. Aldrey está conforme con la sentencia y con la opinión, excepción hecha de la primera parte (*a*) de la discusión del 2º error.

El Juez Asociado Sr. Wolf disintió. El Juez Asociado Sr. Texidor no intervino.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF.

En el caso de *El Pueblo* v. *Torres Gómez*, 33 D.P.R. 185, se resolvió claramente que las notas taquigráficas tomadas durante una sesión del gran jurado se convertían en un documento público al ser transmitidas a la corte. En otras palabras, según se expuso en la opinión, después que terminan las sesiones del gran jurado, los motivos que ha habido para que se mantengan en secreto han cesado, la Legislatura ha reconocido que no es necesario guardar secreto por más tiempo y ha hecho que la transcripción taquigráfica se convierta en un documento público.

En la opinión de la corte en el presente caso se hace una cita de 16 Corpus Juris, al efecto de que las notas tomadas ante el gran jurado pueden hacerse públicas a discreción de la corte, pero la cita de casos del texto, en mi opinión, demuestra definitivamente que esta regla existe solamente en ausencia de un estatuto a ese respecto. La regla del derecho común o de estados que no tienen un estatuto similar al nuestro, no podría prevalecer sobre la voluntad de la Legislatura de Puerto Rico, según ha sido expresada en la Ley del Gran Jurado. Decir que la corte tiene discreción equivale a recurrir a una situación que existía en el derecho común o en aquellos estados que han seguido el derecho común, y a poner en la ley un elemento que la Legislatura no puso. Cuando la transcripción taquigráfica llega a ser un documento público, según hemos interpretado la ley, a la corte no le queda más discreción que cuando se tratara de una demanda o una contestación. Ni el juez ni el secretario pueden cambiar la naturaleza de un documento público ni someterlo a la discreción de cualquiera de ellos. Esta corte necesariamente tuvo que tener serias dudas, y al leer la opinión de la mayoría, especialmente en vista de que en esta parte del razonamiento no todos los jueces concurrieron, yo no diría que el caso de *El Pueblo* v. *Torres Gómez* ha sido revocado.

El extremo sobre el cual los otros tres jueces estuvieron

contestes fué que el acusado no sufrió perjuicio alguno. Cuando un acusado se ve privado de la oportunidad de repreguntar para demostrar inconsistencias en las manifestaciones de los testigos que declaran contra él, entonces surge el perjuicio. A mayor abundamiento, en el caso de *Torres Gómez* el acusado ya tenía en su poder la transcripción taquigráfica de los procedimientos ante el Gran Jurado, pero no se reveló si existía o no una inconsistencia. La falta de oportunidad de repreguntar fué la razón fundamental para revocar dicho caso. El acusado no tuvo esa oportunidad en el presente caso.

La opinión de la mayoría dice que en los autos no aparece nada que demuestre perjuicio. Naturalmente. Un acusado nunca podría demostrar que ha sufrido perjuicio si no se le da la oportunidad de examinar las notas tomadas ante el Gran Jurado; si le son negadas por orden de la corte. El tiempo de que dispongo para escribir opiniones disidentes es limitado, y no examinaré las autoridades (probablemente hay algunas de este tribunal), pero me parece, si mal no recuerdo, que la regla es que en una causa criminal se presume que hay perjuicio cuando se comete error, y la falta de perjuicio debe aparecer de los autos o de algunas circunstancias especiales del caso.

Por las razones que anteceden, disiento de la opinión de la corte.