EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CÁNDIDO SANTOS MARTÍNEZ, acusado y apelante.

Núm. 14312.—*Sometido:* Abril 13, 1950. *Resuelto:* Abril 27, 1950.

*Luis A. Archilla Laugier* y *José E. Bosch Roqué*, abogados del apelante; *Hon. Procurador General Vicente Géigel Polanco, J. Rivera Barreras, Fiscal del Tribunal Supremo* y *Fernando Fornaris, Jr., Fiscal Auxiliar*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Cándido Santos Martínez fué acusado y convicto de infringir la sección 4 de la Ley 220 de 15 de mayo de 1948 (pág. 739) conocida por Ley de la Bolita. De la sentencia dictada en su contra ha apelado y en apoyo de su recurso señala cuatro errores.

En el primero de ellos alega que su convicción es nula toda vez que la referida sección de la Ley 220 es inconstitucional y sin valor legal alguno: "porque viola la cláusula del debido procedimiento de ley contenida en la Enmienda Catorce de la Constitución Federal y el artículo 2 de la Carta Orgánica de Puerto Rico; porque dicha sección no contiene un *standard* determinable de culpabilidad; porque la frase 'que se pudieren utilizar o usar' empleada en el estatuto es fatalmente vaga e imprecisa." Las cuestiones planteadas por este señalamiento han sido ya resueltas adversamente a la contención del apelante, por lo que se hace innecesario

detenernos en la discusión de las mismas. *Pueblo* v. *Mantilla*, ante, pág. 36.

Con cierta antelación al juicio el acusado presentó una moción solicitando se declarara que su arresto era ilegal, así como la supresión y devolución de la evidencia ocupada. Dicha moción fué vista poco antes de comenzar el juicio y al ser declarada la misma sin lugar se vió éste en sus méritos. La prueba testifical aducida por el acusado en apoyo de su moción fué al efecto de que él se encontraba en el cafetín fonda de Isidro Quiñones viendo jugar dómino y billar a otras personas que allí estaban y que cuando llegaron los agentes de la policía uno de ellos le dijo que estaba arrestado; que protestó de ello, que se le tiraron encima, lo registraron y le quitaron el dinero y que en aquel momento no estaba cometiendo ningún delito, habiendo estado en dicho sitio desde por la tarde. La prueba del fiscal tendió a demostrar que el 21 de mayo de 1949 cuatro policías iban en automóvil por la Calle del Carmen, de Santurce, y al acercarse a un salón de billar que está en la esquina de la Calle de La Monserrate, uno de ellos vió que el acusado, mientras se hallaba en una de las puertas de entrada del negocio, escribía números en una libreta anaranjada; que una persona que estaba contigua al acusado le entregaba dinero y que éste lo metía en una bolsa; que el policía Padilla que ya le había pedido al chófer que detuviera el vehículo, se desmontó y siguió al acusado, quien al darse cuenta de la presencia de los policías, caminó hacia el interior del establecimiento, entregándole un paquete a Ismael Pagán, y que Pagán inmediatamente colocó dicho paquete en el dintel de una puerta interior; que el paquete fué examinado por la policía y resultó contener material de la bolita; que entonces la policía arrestó y registró al acusado, ocupándole algún dinero "en moneda fraccionaria y un lápiz". Para una comprensión mejor de lo ocurrido nos referiremos en seguida a lo pertinente de las declaraciones de los policías Antonio Díaz y José M. Padilla. El primero de ellos, examinado por el fiscal, declaró:

"Esa noche, de ocho y media a nueve, el día 21 de mayo, veníamos en un automóvil el Sargento Diego Ortiz, el detective José M. Padilla y Pacheco, por la Calle del Carmen hacia la Calle Monserrate. Cuando nosotros nos acercamos a un billar que hace esquina, Padilla, que venía sentado hacia el lado izquierdo mío, en el asiento de atrás, le dice a Pacheco: 'Párate, mira un bolitero ahí'. Entonces, inmediatamente abrió la puerta, se tiró, yo me tiré, entonces ví al acusado con una libreta color anaranjada en las manos y a la vez se echaba un cartucho en el bolsillo izquierdo, de papel. Se metió a un billar que hay. Padilla le siguió y yo dí la vuelta por otra puerta. Cuando llegué a la puerta donde está la cocina de la fonda se encontró con un joven, que es ese muchacho que declaró aquí, y le entregó la libreta y un papelito que se sacó del bolsillo. El muchacho lo puso en eso que tiene la puerta arriba. Cuando fuí a arrestarlo a él me hizo resistencia y se me fué. Cuando se tiró a la calle y se metió al billar, allí fué el momento que el Sargento Ortiz y ellos lo sacamos del billar y lo metimos dentro del carro. Eso fué todo. Le sacamos el cartucho que contenía $67.65 en billetes y moneda fraccionaria y un lápiz. Más tarde vino Padilla con el muchacho y la libreta que él había dejado. Procedimos al arresto de los dos aunque el muchacho manifestó 'eso no es mío'.

"... ... ... ... ... ...

"R. Eso no es mío, eso es de este hombre que me lo dió.

Eso lo resolverá la Corte y procedimos al arresto de los dos. ... ... ..."

Y el segundo, que el día 21 de mayo era detective de la Policía Insular; que ese día vió al acusado "apuntando números de bolita en una libreta . . . anaranjada en la pared de un restaurant-fonda en la Calle . . . Monserrate esquina del Carmen de la Parada 16 de Santurce.

"Hon. Fiscal: P. ¿Lo vió Ud. y qué ocurrió?

"R. Cuando lo ví me iba a apear del carro y él notó la presencia de nosotros y caminó hacia dentro de la fonda y sacó del bolsillo una lista de papel y se la dió a un muchacho que estaba parado en la puerta de la cocina, de nombre Ismael Pagán. El muchacho cogió la libreta y la lista de papel.

"... ... ... ... ... ... ...

"R. Lo ví. El muchacho cogió la libreta y las listas y las puso sobre la puerta de la cocina.

"... ... ... ... ... ... ...

"R. El Sargento Diego Ortiz le hizo un recibo, él no quiso recibirlo y alegaba que el dinero que le habían ocupado no era de la bolita. Que solamente el menudo era de la bolita.

"P. ¿Cómo él alegaba eso?

"R. Las palabras exactas no las recuerdo. Le decía que él no firmaba el recibo porque todo aquel dinero no era de la bolita sino todo el menudo.

" . . . . . . . . . . . . . . . . . . . . . . . .

"P. ¿A qué distancia se encontraba el acusado de usted, que estaba dentro del carro?

"R. Como a seis pies.

"P. ¿Este acusado estaba en la calle?

"R. Estaba en la acera.

"P. ¿De qué sitio?

"R. En la acera del cafetín fonda.

" . . . . . . . . . . . . . . . . . . . . . . . .

"P. ¿De noche veía el color anaranjado?

"R. Había luz.

"P. ¿Una luz grande?

"R. Había luz.

" . . . . . . . . . . . . . . . . . . . . . . . .

Interrogado este testigo por el Lic. Archilla Laugier declaró:

"P. ¿De noche y a esa distincia dice que veía esos números?

"R. Sí, señor. Una distancia muy cerca.

" . . . . . . . . . . . . . . . . . . . . . . . .

"P. ¿Había otra persona con él en ese instante?

"R. Sí, señor.

"P. ¿Quién?

"R. Un señor parado al lado de él.

"P. ¿Cómo se llama?

"R. No sé, yo sé que lo llama, que le entregó un dinero y él sacó la bolsa y lo echó adentro."

Con esta prueba la corte declaró sin lugar la moción del acusado.

En este caso no hubo un registro previo al arresto. Por el contrario, la corte inferior llegó a la conclusión de que de conformidad con la prueba por ella creída, el acusado cometía un delito en presencia de la policía y de que con posterioridad a su comisión y del arresto subsiguiente, la detective practicó

el registro del acusado. Si los policías vieron que el acusado le entregó a otra persona un paquete, que ésta inmediatamente lo puso en el dintel de una puerta y si el paquete al ser ocupado resultó contener material de la bolita, no hay duda de que el acusado cometía un delito en presencia de la policía y podía en su consecuencia ser registrado, sin que para ello fuera necesaria una orden de allanamiento. Véase *Pueblo* v. *Colón Torres*, resuelto por opinión *Per Curiam* en 9 de marzo de 1950.

En armonía con el artículo 116 del Código de Enjuiciamiento Criminal "Un oficial de orden público puede hacer un arresto . . . por un delito público cometido, . . . en su presencia." Luego de un arresto legal el acusado puede ser válidamente registrado por la policía. *United States* v. *Weeks*, 232 U.S. 383, 392 y *United States* v. *Rabinowitz*, 339 U.S. 56. En su consecuencia, el segundo error tampoco ha sido cometido.

■■ El acusado sostiene además que la corte erró "al negarse a admitir en evidencia un papel en el que el fiscal hizo que el acusado escribiera su nombre y la fecha del día en que el juicio se celebraba a los efectos de determinar la indentidad de su escritura con la escritura de las listas presentadas en evidencia." Durante el curso del juicio y mientras declaraba el acusado, el fiscal pidió a éste que escribiera su nombre en un pedazo de papel que le entregó, así como la fecha del día en que estaban. El acusado dijo que no sabía el día que estaba viviendo y luego de indicársele que era el 30 de junio "aparentemente" accedió a lo que le pedía el fiscal.(¹) Entonces ocurrió lo siguiente:

"Lcdo. Bosch: Se le hizo una prueba al acusado. Quisiéramos saber cuál es el resultado.

"Hon. Juez: Ésa es una cosa que se le ocurrió al Fiscal. *Si la quiere presentar la Corte resolverá.*

---

(¹) Decimos "aparentemente" porque no se desprende si el acusado escribió o no la información que se le pedía, aunque es de suponerse que así lo hizo.

"Lcdo. Archilla Laugier: En el contrainterrogatorio el Fiscal pone al testigo a escribir. Se hace con algún propósito. No se puede pedir que los testigos hagan una cosa sin propósito alguno.

"Hon. Juez: *No hay nada ante la Corte.*

"Lcdo. Archilla Laugier: Vamos a presentar en evidencia los números que hizo el acusado ante la Corte.

"Hon. Fiscal: Nos oponemos.

"Hon. Juez: Con lugar. *No estamos en turno de ofrecer evidencia. El interrogatorio a lo único que lleva a la Corte es a saber que el acusado sabe escribir.*

"Lcdo. Archilla Laugier: Oposición. Estamos en el turno de presentar prueba.

"Hon. Juez: *Puede presentarla si la trae en su oportunidad.*

"Lcdo. Archilla Laugier: Creemos que ésta es la mejor oportunidad para presentar evidencia de palabras y números escritos por el acusado.

"Lcdo. Bosch: Es para demostrar que el Fiscal ha hecho una prueba de números y letras y se demuestra que los números que hacía el acusado en aquella noche son distintos en la forma de escribir el acusado, diferente a la prueba que obra en autos.

"Hon. Juez: *Si se trae en su oportunidad la evidencia, la Corte resolverá.*

"Lcdo. Archilla Laugier: Excepción. Ésta es la oportunidad porque estamos presentando nuestra prueba." (Bastardillas nuestras.)

Tampoco cometió la corte este error. En el momento en que se requerió del acusado que escribiera su nombre y la fecha del día en que se celebraba el juicio, el fiscal repreguntaba al testigo. No era ése el momento oportuno para que la defensa presentara prueba. En ese momento ésta pudo identificar el documento si su propósito era ofrecerlo en evidencia. No lo hizo así, a pesar de que la corte le indicó que podía presentarlo en su oportunidad. Y si en realidad su objeto era insistir en la admisión del documento, debió ofrecerlo al terminar el contrainterrogatorio del ministerio público. De ser el mismo rechazado por la corte, el acusado debió insistir en que el documento quedara en autos como prueba ofrecida y no admitida por la corte. *Cf. Pueblo* v. *Ayala,* 38 D.P.R. 423. Bajo estas circunstancias el error no ha sido cometido.

En el cuarto y último error señalado el acusado imputa a la corte a quo haber errado al declararle culpable del delito imputádole sin que hubiera evidencia suficiente en su contra. La cuidadosa lectura que hemos hecho de la transcripción de evidencia nos convence de que en los autos hay suficiente prueba para justificar la conclusión de la corte inferior.

*Debe confirmarse la sentencia apelada.*

Opinión disidente del Juez Asociado Sr. Todd, Jr.

Disiento, primero, por la cuestión constitucional envuelta (véase mi opinión disidente en el caso de *Pueblo* v. *Mantilla,* ante, pág. 54) y segundo, porque considero que la corte inferior cometió manifiesto error en la apreciación de la prueba.