EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* LUIS PIERAS TARAZONA Y OTROS, acusados y apelantes.

Núm. 15011.—*Sometido:* Julio 2, 1951. *Resuelto:* Julio 30, 1951.

*Rafael V. Pérez Marchand* y *Santos P. Amadeo,* abogados del apelante; *Hon. Procurador General Víctor Gutiérrez Franqui, J. Rivera Barreras, Fiscal del Tribunal Supremo* y *Frank Vizcarrondo Vivas, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

*PER CURIAM:* La sección 10 de la Ley núm. 220 de 15 de mayo de 1948 (págs. 739, 749), según fué enmendada por la núm. 264 de 9 de mayo de 1950 (págs. 687, 691), provee:

"Todo dueño, apoderado, agente, encargado, director o administrador de los juegos prohibidos por esta Ley será reo de delito felony, . . . y convicta que fuere dicha persona, será castigada con pena de presidio que no será menor de un (1) año ni mayor de diez (10) años; *Disponiéndose,* que, todos los juicios por infracción a la presente sección se celebrarán por tribunal de derecho exclusivamente; y *Disponiéndose, además,* que toda persona que fuere convicta de una infracción a las disposiciones de esta sección no podrá acogerse a los beneficios de la Ley número 259 aprobada en 3 de abril de 1946, según fué enmendada por la Ley número 177 de 4 de mayo de 1949."[1]

De infringir esa sección fueron acusados ante el Tribunal de Distrito de Puerto Rico, Sección de Caguas, Luis Pieras Tarazona, Sotero Montañez Grillo, Luis Montañez Villegas, Juan Valentín Valentín, Francisco Rivera Guzmán, Antonio Rodríguez Rodríguez, Críspulo González Cruz, Eufemio Claudio Claudio, Manuel Delgado Jiménez, Fernándo Dávila Rodríguez, Francisco Miranda Fraguada, Arturo Solá Rodríguez, Serafín Torres Rivera y Bernardo Colón Rosario, los dos primeros como administradores y los doce restantes como agentes de aquéllos.

[1] La Ley núm. 259 de 1946 ((1) pág. 535), supra, establece la sentencia probatoria en el sistema judicial de Puerto Rico.

Radicadas por los acusados sendas mociones sobre supresión de evidencia y allanamiento y arresto ilegales, las partes estipularon que se ofreciera primeramente prueba en relación con las mismas y que los casos en sus méritos quedaran sometidos por dicha prueba. (²)   El tribunal aprobó la estipulación y las partes adujeron copiosa prueba testifical y documental.   Concedidos términos para memorándum y radicados éstos, el tribunal declaró culpable a los acusados, sentenciando a Luis Pieras Tarazona, a Sotero Montañez Grillo y a Juan Valentín Valentín a cumplir de cinco a diez años de presidio; a Luis Montañez Villegas de tres a diez años de presidio; y a los demás de dos a diez años de presidio con trabajos forzados, y sin costas.   Apelaron todos para ante esta Corte y en apoyo de sus respectivos recursos alegan que el tribunal inferior cometió los siguientes errores:

(1)  Al negarles el juicio por jurado que oportunamente solicitaron;

(2)  Al declarar sin lugar sus mociones sobre arresto ilegal, registro ilegal y supresión de evidencia;

(3)  Al condenar a Luis Pieras Tarazona y Sotero Montañez Grillo "como administradores para su lucro y beneficio de una banca del juego denominado bolita;" y a los demás acusados "como agentes de Luis Pieras y Sotero Montañez Grillo para el referido juego de bolita", por no haber probado El Pueblo dicho cargo más allá de una duda razonable; y

(4)  Al tomar parte activa, innecesaria e improcedente en los interrogatorios durante la vista de sus respectivos casos, demostrando pasión, parcialidad y prejuicio hasta el momento de dictar las sentencias; negando así a los acusados el juicio imparcial a que por ley tenían derecho.

La cuestión suscitada por el primero de los errores señalados, relativa a la no concesión de juicio por jurado, ha sido resuelta por este Tribunal adversamente a su contención.

--------

(²) Ello fué así, no obstante haberse solicitado por los acusados y decretado por la corte juicios por separado.

*Rivera* v. *González, Alcaide de Cárcel,* 71 D.P.R. 668. Así lo admiten los propios acusados. La lectura que hemos hecho de los casos por ellos citados no nos hace cambiar de criterio.

■ El segundo error tampoco fué cometido. Al iniciar la discusión de este supuesto error, los acusados insisten en que el tribunal a quo declaró sin lugar meramente su moción sobre supresión de evidencia y guardó silencio respecto a sus mociones sobre registro ilegal y arresto ilegal. Si bien dicho tribunal, al resolver las cuestiones de derecho planteádasle hizo constar que "la corte entiende que no hay mérito alguno para declarar con lugar la moción de supresión de evidencia. . . y admite en evidencia la evidencia documental sometida por el fiscal," es innegable que su propósito fué declarar sin lugar las tres mociones que tenía ante su consideración. Eso se desprende claramente de la admisión en evidencia de la referida prueba documental y de la condena subsiguiente de todos y cada uno de los acusados.

■■ Al discutir este error también atacan los acusados la orden de allanamiento e insisten en que a virtud de la misma no se facultó al detective José M. Padilla para proceder al arresto y registro de personas no mencionadas en su declaración jurada o en la orden de allanamiento. Diremos en primer lugar que la orden de allanamiento va dirigida contra la cosa a manera de un procedimiento *in rem,* no importando quién sea su dueño u ocupante. *Pueblo* v. *Yulfo,* 71 D.P.R. 820, 822. Y en segundo lugar que conforme se verá más adelante por la discusión que hacemos del siguiente error, todos y cada uno de los acusados fueron arrestados y registrados en momentos en que cometían un delito en presencia de la policía. Véase *Pueblo* v. *Santos,* 71 D.P.R. 310; *Pueblo* v. *Ríos,* 71 D.P.R. 969.

■ La discusión del tercer error señalado nos obliga a reseñar, aunque sea tan sólo de la manera más somera, alguna de la prueba inculpatoria que tuvo el tribunal sentenciador ante sí en relación con cada uno de los acusados. Al

entrar los policías a la casa allanada oyeron ruido de dinero y personas hablando y al pasar hacia dentro sorprendieron a Sotero Montañez Grillo, Luis Pieras Tarazona, Juan Valentín Valentín, Luis Montañez Villegas, Leoncio Ruiz, (³) Críspulo González Cruz, Bernardo Colón Rosario y Francisco Rivera Guzmán manipulando, examinando y haciendo el escrutinio de material de la bolita, consistente éste en listas de papel con números de tres cifras seguidos de guión y otra cifra a la derecha. Buscaban el número que había salido agraciado. A Pieras Tarazona se le ocuparon quince listas de papel con números apuntados para el juego de la bolita, así como $115 en efectivo y un lápiz que tenía sobre la mesa. Luis Montañez Villegas, al notar que se le ocupó el material a Pieras, lo puso sobre la mesa y allí el testigo Padilla lo ocupó. A Sotero Montañez Grillo el sargento Ortiz le ocupó un paquete de listas de papel con números de la bolita apuntados. Críspulo González Cruz dejó caer al suelo otro paquete de listas con números de la bolita y el sargento Ortiz lo recogió. Bernardo Colón Rosario tenía otro paquete de listas, las tiró para atrás y el sargento Ortiz también las recogió. Juan Valentín Valentín estaba sentado en una silla a la mesa con un paquete de listas con números de bolita. Carlos Gueits recogió del suelo varias listas de papel con números de bolita apuntados que dejó caer Francisco Rivera Guzmán en el piso. El policía Padilla preguntó a Leoncio Ruiz quiénes eran los dueños de la banca y aquél contestó en presencia de éstos que los banqueros eran Luis Pieras Tarazona y Sotero Montañez; que entonces Sotero habló y dijo: "Bueno yo el dueño no soy, yo soy socio, porque aquí hay más socios." Preguntado Sotero quiénes eran los socios, no quería contestar, pero luego manifestó: "Pieras y Timoteo de Jesús . . . . él (refiriéndose a Timoteo) no viene, él manda a Juan Valentín;" preguntado Valentín si era dueño también, éste contestó: "Yo

---

(³) Leoncio Ruiz fué arrestado pero por haber ingresado en el ejército americano unos días antes de verse el caso, no figura como acusado.

solamente represento a Timoteo de Jesús." *Los demás acusados ayudaban a examinar las listas para esculcar el número agraciado.*([4])    Luis Pieras Tarazona le dió $2 a Francisco Ruiz para que le permitiera contar el dinero en la casa allanada.

*Fernándo Dávila Rodríguez* estaba sentado en el escalón de la galería de la parte de atrás de la casa y del bolsillo de la camisa se sacó un pedazo de papel de tamaño regular y lo tiró al piso, estando ese papel escrito con números de tres guarismos, un guión y una unidad a la derecha.    El día que lo arrestaron, en unión a los demás, hubo sorteo de la lotería de Puerto Rico.

*Manuel Delgado Jiménez* tenía otra lista de papel con números de la bolita.    Se la ocuparon en unión a $37.    Estaba parado al lado de Fernando Dávila Rodríguez.

*Arturo Solá Rodríguez* fué sorprendido con una lista de papel con números de la bolita y $13.65 en el patio de la casa allanada.    El dinero lo tenía en el bolsillo.    Estaba recostado con otros seis junto a la escalera y la lista la tenía en la pared, "chequeando" con un lápiz.

*Eufemio Claudio Claudio* estaba junto a la escalera, entrando a la galería, con una lista de números de la bolita, de tres guarismos, un guión, y números a la derecha; estaba mirándola.

*Antonio Rodríguez Rodríguez* fué sorprendido mientras tiraba al suelo una lista en papel de estraza, con números de la bolita.    Estaba sentado cerca de la escalera que sale de la terraza al patio.    Le ocuparon $35.

*Serafín Torres Rivera* y *Francisco Miranda Fraguada* fueron sorprendidos también con listas de la bolita en las manos, y con dinero.    Las listas de la bolita eran bastante grandes.    Ambos estaban en el patio de la casa allanada.

La transcripción de evidencia es en verdad voluminosa y lo esencial de la prueba contra cada uno de los acusados ha

---

([4]) A preguntas del Juez se aclaró que esa manifestación se refería tan sólo a los acusados antes mencionados y no a los demás.

sido expuesta a grandes rasgos. Ella, a nuestro juicio, justifica las sentencias condenatorias dictadas contra todos y cada uno de los acusados. Como hemos visto, tendió a demostrar que Sotero Montañez Grillo, Luis Pieras Tarazona, Juan Valentín Valentín, Luis Montañez Villegas, Críspulo González Cruz, Bernardo Colón Rosario y Francisco Rivera Guzmán, al ser sorprendidos por la policía, manipulaban, examinaban y hacían el escrutinio de material de la bolita y además que los dos primeros eran socios en el negocio de la bolita y el tercero, o sea Juan Valentín Valentín, era representante de Timoteo de Jesús. El tribunal sentenciador claramente pudo concluir que bajo la sección 10 de la ley estos siete acusados podía ser considerados como dueños, agentes, encargados, directores o administradores del juego de la bolita.

Respecto a los acusados restantes la prueba fué al efecto de que al ser allanada la casa éstos se encontraban en el patio, a poca distancia de los siete acusados mencionados en el párrafo anterior; que formaban un grupo junto a la escalera; que todos ellos fueron sorprendidos teniendo en su poder listas con números de la bolita; que "chequeaban" las mismas, y que ese día se había jugado la lotería de Puerto Rico. Bajo las circunstancias concurrentes opinamos que el tribunal a quo estuvo justificado en concluir que estos últimos siete acusados actuaban como agentes del juego prohibido de la bolita.

En relación con el cuarto error señalado, si bien es cierto que el juez que presidía el tribunal inferior hizo, tanto a los acusados que ocuparon la silla testifical como a los testigos ofrecidos por una y otra parte, innumerables preguntas, la lectura que hemos hecho de la transcripción no nos convence de que lo hiciera movido por pasión, prejuicio o parcialidad. La mayoría de las preguntas hechas por él lo fueron para aclarar conceptos y dudas. Otras no fueron sino repeticiones de preguntas ya hechas por la defensa o por el fiscal; y las menos eran impertinentes e irrevelantes. Ninguna de ellas, sin embargo, demuestra pasión, prejuicio o parcialidad.

Al hacer el fiscal una pregunta en relación con Timoteo de Jesús y oponerse la defensa, la corte manifestó: "Aquí desgraciadamente no estamos enjuiciando a este señor. . . . Parece que el compañero no vive en Puerto Rico, yo puedo decirle al compañero que en Puerto Rico se sabe como una cosa casi universal que Timoteo de Jesús se dedica a la bolita. . . . Se sabe por la opinión pública que ese caballero que es cliente del compañero es un banquero de bolita." Al llamarse la atención a la corte por la defensa respecto a que Timoteo de Jesús no era uno de los acusados, la corte resolvió que: "Haciendo un recuento de lo que ha pasado, posiblemente hay cosas que son impropias y no deben ir al récord. La pregunta que hizo el fiscal, si usted conoce a Timoteo de Jesús, la corte la permite, y debe permanecer en récord. También debe permanecer la pregunta de si es o no administrador de una banca de bolita de Timoteo de Jesús. Que eso permanezca en récord, todo lo demás queda eliminado." Bajo esas circunstancias y celebrándose el caso ante tribunal de derecho, no vemos en qué forma este incidente pudo perjudicar a los acusados.

Al discutir el cuarto error los apelantes también alegan que prueba demostrativa de que el juez actuó con pasión, prejuicio y parcialidad lo fué que al sentenciar a los acusados manifestó que se alegraba de que habían metido en la cárcel las águilas imperiales de la bolita.

Se desprende de los autos que un periódico había publicado algo en relación con cierta amenaza hecha al juez por uno de los acusados; que el juez explicó lo sucedido y que la defensa indicó que en otra parte del periódico aparecía que el juez había dicho que había llegado el momento esperado por él para sentenciar a las águilas imperiales del negocio. Y que el juez entonces manifestó: "Como no, recuerdo eso, lo hice parodiando una sentencia del Tribunal Supremo. Yo le dije a la policía y a los detectives que los felicitaba porque me habían traído aquí banqueros de bolita. Que en anteriores ocasiones me habían traído los infelices que había tenido que

mandar a la cárcel, cuando yo sabía que los banqueros anda-
ban sueltos por la calle. Que por eso me alegraba que habían
metido en la cárcel las águilas imperiales de la bolita." No
vemos cómo esas palabras pueden demostrar pasión, prejui-
cio o parcialidad, habiendo sido pronunciadas al dictar las
sentencias varios días después de ser convictos los acusados;
especialmente si se recuerda que fué el propio abogado de los
acusados quien por primera vez y mientras declaraba el fiscal
de distrito como testigo de la propia defensa, hizo referencia
a las águilas imperiales.

*Las sentencias apeladas serán confirmadas.*

El Juez Asociado Sr. Snyder no intervino.