ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>PETICIONARIO<br><br><br>V.<br><br><br>SANTIAGO APOLINAR RONDÓN<br><br>RECURRIDO | KLCE202401144 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br>_____<br>Caso Criminal:<br>KVI2023-G027-029<br>KLA2023-G0175-0176<br>KLA2023-G0194-0195<br>K0P2023-G0027<br>_____<br>SOBRE:<br>ART. 93 (A)1ER G. (2 CASOS)<br>TENT. ART. 93 (A)<br>ART. 6.05 LEY 168<br>ART. 6.14 (B)LEY 168(3 CASOS)<br>ART. 249 (B) GR CP |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez

Salgado Schwarz, Carlos G., Juez Ponente

## S E N T E N C I A

En San Juan, Puerto Rico, a 27 de enero de 2025.

Comparece el Pueblo de Puerto Rico ("Pueblo" o "Ministerio Público") mediante recurso de *certiorari* y solicita que revisemos la Resolución emitida el 8 de octubre de 2024[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan ("TPI", "foro recurrido" o "foro primario") en la que suprimió una pistola y tres magazines.

Por los fundamentos que exponemos a continuación, se expide el auto y se **confirma** al foro primario.

-I-

Según surge del expediente ante nuestra consideración a continuación, exponemos los hechos

_____
[1] Notificada el 10 de octubre de 2024.

pertinentes a la controversia de autos. Por hechos ocurridos el 10 de julio de 2023 en el municipio de San Juan, el Ministerio Público presentó acusaciones contra el señor Santiago Apolinar Rondón ("Apolinar Rondón" o "Acusado") por los siguientes delitos: *Asesinato en primer grado*[2], *Riesgo a la seguridad u orden público al disparar un arma de fuego*[3], *Portación, Transportación o Uso de Armas de Fuego sin Licencia*[4] y *Disparar o Apuntar Armas de Fuego*[5]. Así las cosas, el 13 de julio de 2023, luego de haber obtenido una confidencia[6], se diligenció la orden de arresto contra Apolinar Rondón en el Residencial Manuel A. Pérez, edificio E-10, apartamento 78.[7] Según el testimonio del Ministerio Público, el Agente Heriberto Rivera García ("Agente Rivera") se comunicó con el Departamento de la Vivienda a fin de conocer quién residía en dicho apartamento. Cabe señalar que en dicha llamada, lo autorizaron a entrar a la residencia.[8] Al llegar al apartamento, tocó la puerta en varias ocasiones, sin embargo, al no obtener respuesta, forzó la puerta del apartamento logrando acceso a este.[9] Al entrar al apartamento, el Agente Rivera observó a Apolinar Rondón detrás de una pared en el área de la cocina.[10] En ese momento, le da los comandos verbales,

---

[2] Artículo 93(a) de la *Ley Núm. 146 de 30 de julio de 2012, según enmendada* (Código Penal de Puerto Rico).
[3] Artículo 249(b) de la *Ley Núm. 146 de 30 de julio de 2012, según enmendada* (Código Penal de Puerto Rico).
[4] Artículo 6.05 de la Ley de Armas de Puerto Rico de 2020, *Ley Núm. 168 de 11 de diciembre de 2019, según enmendada.*
[5] Artículo 6.14(a) de la Ley de Armas de Puerto Rico de 2020, *Ley Núm. 168 de 11 de diciembre de 2019, según enmendada.*
[6] Véase Anejo VIII del recurso de *certiorari*, Regrabación de vista del 7 de octubre de 2024, minuto 26:52.
[7] Véase Anejo VIII del recurso de *certiorari*, Regrabación de vista del 7 de octubre de 2024, minuto 16:52.
[8] Véase Anejo VIII del recurso de *certiorari*, Regrabación de vista del 7 de octubre de 2024, minuto 17:30.
[9] Véase Anejo VIII del recurso de *certiorari*, Regrabación de vista del 7 de octubre de 2024, minuto 18:04.
[10] Véase Anejo VIII del recurso de *certiorari*, Regrabación de vista del 7 de octubre de 2024, minuto 18:24.

los cuales el Acusado obedece.[11] Luego de ello, el Agente Rivera se dirigió a una de las habitaciones[12] del apartamento para asegurarse de que no hubiera otra persona que pudiera causarle daño a él o al Acusado. Al entrar a la habitación, observó en una tablilla unos magazines y un arma de fuego.[13] En ese momento, se comunicó con la división de Homicidios y con el Agente González.[14] Una vez el Agente González llegó al lugar, verificó el área y se le hizo entrega de la custodia de Apolinar Rondón. A su vez, personal de Servicios Técnicos tomó fotos de la evidencia obtenida y ocupó el arma de fuego con los magazines.[15]

Así las cosas, luego de comenzado el juicio, el 7 de octubre de 2024 testificó el Agente Rivera y el Agente González. A preguntas de la Defensa, el Agente Rivera admitió que, al momento de dirigirse hacia la habitación donde se encontró la evidencia objeto de controversia, Apolinar Rondón no representaba un peligro para él[16]. Además, admitió que el registro de dicha habitación no fue parte de un "*hot pursuit*".[17]

Así las cosas, en la vista del 8 de octubre de 2024, la Defensa planteó que la ocupación del arma de fuego y los magazines en el apartamento #78 del Residencial Manuel A. Pérez fue ilegal y se debía suprimir, toda vez que los Agentes no contaban con una Orden de Allanamiento

---

[11] Véase Anejo VIII del recurso de *certiorari*, Regrabación de vista del 7 de octubre de 2024, minuto 18:32.
[12] El Agente Rivera indicó que la evidencia observada se encontraba a 15 o 20 pies, aproximadamente, del lugar donde se encontraba el Acusado. Véase Anejo VIII del recurso de *certiorari*, minuto 38:52.
[13] Véase Anejo VIII del recurso de *certiorari*, Regrabación de vista del 7 de octubre de 2024, minuto 19:10.
[14] Véase Anejo VIII del recurso de *certiorari*, Regrabación de vista del 7 de octubre de 2024, minuto 19:32.
[15] Véase Anejo VIII del recurso de *certiorari*, Regrabación de vista del 7 de octubre de 2024, minuto 19:47.
[16] Véase Anejo VIII del recurso de *certiorari*, Regrabación de vista del 7 de octubre de 2024, minuto 36:25.
[17] Véase Anejo VIII del recurso de *certiorari*, Regrabación de vista del 7 de octubre de 2024, minuto 37:48.

de dicho apartamento.[18] Por otro lado, el Ministerio argumentó que la ocupación del arma de fuego y los magazines fue conforme a derecho por tratarse de un registro incidental al arresto, por el Acusado haber estado en el apartamento de forma ilegal.[19] Luego de evaluados los planteamientos, el Tribunal declaró "*Ha Lugar*" la solicitud de supresión de evidencia presentada por la Defensa.[20] El foro recurrido fundamentó su determinación en el Artículo II, Sección 10 de la Constitución de Puerto Rico y la 4ta Enmienda de la Constitución de los Estados Unidos. Particularmente, el foro primario señaló que se prohíbe el registro irrazonable, es decir, debe haber justificación o razón suficiente para llevarlo a cabo.[21] Además, el TPI indicó que el registro debe ser incidental al arresto. Esto ocurre cuando el área que se registra está al alcance del sujeto a ser arrestado. El propósito de este registro es ocupar armas que puedan ser utilizadas por la persona arrestada para agredir a los agentes o para intentar irse a la fuga o destruir evidencia.[22] El foro primario también enfatizó en el hecho de que un arresto legal no convalida un registro o incautación sin orden, toda vez que el registro tiene que ser razonable.[23] A fin de cumplir con el criterio de razonabilidad, se toman en consideración los siguientes elementos: a) si la intervención estuvo justificada y b) si el alcance del

---

[18] Véase Anejo XI del recurso de *certiorari*, Regrabación de vista del 8 de octubre de 2024, minuto 2:06:09 en adelante.
[19] Véase Anejo XI del recurso de *certiorari*, Regrabación de vista del 8 de octubre de 2024, minuto 2:08:40.
[20] Véase Anejo XI del recurso de *certiorari*, Regrabación de vista del 8 de octubre de 2024, minuto 2:19:09.
[21] Véase Anejo XI del recurso de *certiorari*, Regrabación de vista del 8 de octubre de 2024, minuto 2:13:00.
[22] Véase Anejo XI del recurso de *certiorari*, Regrabación de vista del 8 de octubre de 2024, minuto 2:14:40.
[23] Véase Anejo XI del recurso de *certiorari*, Regrabación de vista del 8 de octubre de 2024, minuto 2:15:30.

registro guardó relación con las circunstancias que condujeron a la intervención con la persona afectada.[24] Cabe señalar que toda incautación o registro sin orden se presume irrazonable y por consiguiente inválido.[25] Así, el TPI indicó que una vez se ha arrestado a una persona, un registro en otro lugar, no se considera incidental al arresto.[26]

A tenor con lo anterior, el foro recurrido no encontró razonable el registro llevado a cabo en el apartamento #78 del Residencial Manuel A. Pérez, toda vez que estuvo fuera del perímetro del acusado, quien ya se encontraba bajo la custodia de la Policía de Puerto Rico y no se demostró razón alguna que pusiera en peligro la seguridad del acusado o de los agentes.[27] Por tal razón, el foro recurrido suprimió el arma de fuego y los magazines ocupados.[28]

Inconforme con dicha determinación, el 21 de octubre de 2024 el Ministerio Público acudió ante nos mediante recurso de *certiorari* e hizo los siguientes señalamientos de error:

> EL TRIBUNAL DE PRIMERA INSTANCIA ERRÓ AL SUPRIMIR EL ARMA Y LAS MUNICIONES OCUPADAS, A PESAR DE QUE EL SEÑOR APOLINAR RONDÓN NO DEMOSTRÓ QUE TENÍA LEGITIMACIÓN, Y DE QUE CONCLUYÓ QUE ESTE NO TENÍA UNA EXPECTATIVA DE INTIMIDAD EN EL APARTAMENTO DONDE LA EVIDENCIA FUE OCUPADA Y, POR ENDE, NO SE ACTIVÓ LA

---

[24] Véase Anejo XI del recurso de *certiorari*, Regrabación de vista del 8 de octubre de 2024, minuto 2:16:00 en adelante.
[25] Véase Anejo XI del recurso de *certiorari*, Regrabación de vista del 8 de octubre de 2024, minuto 2:16:55. Además, véase *Katz v. United States* 389 U.S. 347 (1967); *ELA v. Coca-Cola Bott. Co.*, 115 DPR 197 (1984).
[26] Véase Anejo XI del recurso de *certiorari*, Regrabación de vista del 8 de octubre de 2024, minuto 2:17:45. Además, véase *Pueblo v. Sosa Díaz*, 90 DPR 622 (1964).
[27] Véase Anejo XI del recurso de *certiorari*, Regrabación de vista del 8 de octubre de 2024, minuto 2:18:00 en adelante.
[28] Véase Anejo XI del recurso de *certiorari*, Regrabación de vista del 8 de octubre de 2024, minuto 2:19:30.

PROTECCIÓN CONTRA REGISTROS IRRAZONABLES.

EL TRIBUNAL DE PRIMERA INSTANCIA COMETIÓ UN ERROR DE DERECHO Y ABUSÓ CRASAMENTE DE SU DISCRECIÓN AL SUPRIMIR EN EL JUICIO EL ARMA DE FUEGO Y LOS MAGAZINES, POR ENTENDER, QUE AQUÍ NO SE CUMPLIÓ CON LA EXCEPCIÓN DEL REGISTRO SIN ORDEN, "PROTECTIVE SWEEP" RECONOCIDA EN MARYLAND V. BUIE, SUPRA, Y LA DOCTRINA DE PLENA VISTA.

-II-

**A. Certiorari**

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior.[29] Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional, por tratarse de ordinario de asuntos interlocutorios.[30] Esta discreción se define como "*el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción*".[31] Asimismo, la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa.[32] Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta.[33] Esto, por razón de que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría un abuso de discreción.

---

[29] *800 Ponce de León Corp. v. American International Insurance Company of Puerto Rico,* 2020 TSPR 104, 205 DPR 163 (2020), *IG Builders et. al. v. BBVAPR*, 185 DPR 307, 337-338 (2012).

[30] *Negrón v. Secretario de Justicia,* 154 DPR 79, 91 (2001).

[31] *García v. Padró*, 165 DPR 324, 334 (2005).

[32] *Id.,* a las págs. 334-335.

[33] *Id.,* a la pág. 335.

**B. Orden de Registro y Allanamiento**

En nuestro ordenamiento jurídico todo registro que se lleve a cabo sin una orden judicial se presume irrazonable. A tales efectos, la Enmienda 4ta de la Constitución de los Estados Unidos dispone lo siguiente:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Por su parte, el Artículo II, Sección 10 de la Constitución de Puerto Rico lee como sigue:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables. No se interceptará la comunicación telefónica. Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse. Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.

En reiteradas ocasiones, el Tribunal Supremo de Puerto Rico ha expresado que el objetivo fundamental de esa disposición constitucional es proteger la intimidad y dignidad de las personas, así como sus pertenencias, domicilio o propiedad frente a las actuaciones arbitrarias e irrazonables por parte del Estado.[34] Esta protección constitucional se activa siempre y cuando la persona que la invoca tenga derecho a una expectativa razonable a la intimidad sobre el lugar o las cosas registradas, por lo que existen algunas instancias en

---

[34] *Pueblo v. Santiago Ferreira Morales*, 147 DPR 238, 248-249 (1998).

las cuales no es necesaria una orden judicial para que un agente del orden público proceda a registrar y/o incautar evidencia.[35] La orden de registro y allanamiento se expide contra el lugar y la casa (*in rem*) y la protección constitucional recae sobre el interés individual en la intimidad sobre el lugar y/u objetos contra intervención injustificada del Estado.[36]

Nuestro ordenamiento jurídico ha impartido vitalidad a esta disposición constitucional regulando el proceso de registros y allanamientos a través de las Reglas de Procedimiento Criminal de Puerto Rico. En particular, la Regla 234 permite que la persona agraviada por un allanamiento de registro ilegal pueda solicitar del tribunal la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro.[37]

### C. Registro incidental al arresto

Existen circunstancias en las que el registro sin orden judicial resulta constitucionalmente permisible.[38] Son situaciones excepcionales en las que no existe expectativa razonable de intimidad que proteger.

Referente al registro incidental al arresto, la norma de exclusión constitucional no aplica al material delictivo que se ocupa tras registrar la persona del arrestado, sus pertenencias o del **área a su alcance inmediato**, siempre que se haga de forma razonable.[39] Según nuestro más alto foro, el registro incidental al

---

[35] *Pueblo v. Díaz, Bonano*, 176 DPR 601, 612 (2009).
[36] *Pueblo v. Pieras*, 72 DPR 779 (1951); O.E. Resumil, <u>Práctica Jurídica de Puerto Rico: Derecho Procesal Penal</u>, San Juan, Ed. Equity Publishing Co., 1990, T.1, §11.5, pág. 280.
[37] 34 LPRA Ap. II, R. 234.
[38] *Pueblo v. Castro Rosario*, 125 DPR 164, 169-170 (1990).
[39] *Pueblo v. Zayas Fernández*, 120 DPR 158, 164 (1987). *Énfasis nuestro.*

arresto se justifica cuando "*se realiza con el propósito de ocupar armas que puedan ser empuñadas y, utilizadas por el acusado para agredir a los agentes del orden público o para intentar una fuga, y para ocupar evidencia que de otro modo el arrestado podría destruir*".[40]

Sobre este particular se expresó el Tribunal Supremo de los Estados Unidos. En esa ocasión, se trataba de un registro en la residencia del arrestado de forma incidental al arresto. El Tribunal federal señaló que aunque está ampliamente justificado:

> [F]or a search of the arrestee's person and the area 'within his immediate control' – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.
> There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs- or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant.[41]

Ahora bien, la norma establecida en el caso de *Chimel* no es absoluta, dado que existen circunstancias excepcionales que justifican apartarse de ella.[42] Derivada de la excepción constitucional del registro incidental al arresto, en *Maryland v. Buie*, el máximo foro federal reconoció por primera vez la doctrina del registro de protección o "*protective sweep*". En esa ocasión, el Tribunal Supremo de los Estados Unidos definió la figura como:

> [A] quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding.... [T]he Fourth Amendment

---

[40] *Íd.*
[41] *Chimel* v. *California*, 395 US 752, 763 (1969).
[42] Véase: P. A. Hubbart, <u>Making Sense of Search and Seizure Law: A Fourth Amendment Handbook</u>, 2da Ed. 2015, pág. 273.

would permit the protective sweep undertaken here if the searching officer "possessed a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted' the officer in believing," […], that the area swept harbored an individual posing a danger to the officer or others.[43]

Respecto a los límites de este tipo de registro, el Alto Foro federal indicó que: "*incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets or other spaces **immediately adjoining the place of arrest** from which an attack could be immediately launched*".[44] Por lo tanto, dicho registro se hace visualmente, de forma rápida y limitado a las áreas adyacentes al lugar donde se efectúa el arresto, de forma tal que sirva como medida de precaución para proteger la seguridad de los agentes u otras personas.[45]

De lo anterior se colige que, *Buie* autoriza dos tipos de modalidades de registros de precaución o "*protective sweeps*". Uno que no requiere sospecha razonable, pues involucra el área inmediatamente adyacente al lugar del arresto y otro que requiere una creencia razonable de que el área alberga a alguien que podría representar una amenaza para la seguridad, respaldada por hechos específicos y articulables -coherentes-, pues involucra otras áreas no contiguas ni inmediatamente adyacentes al lugar del arresto. Bajo esta segunda modalidad, el registro se limita estrictamente a una inspección visual superficial de los lugares en los que podría estar escondida una persona y

---

[43] *Maryland* v. *Buie*, 494 US 325, 327 (1990). *Citas omitidas*.
[44] *Íd*., a la pág. 325.
[45] Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Investigativa*, pág. 380.

no puede durar más de lo necesario para disipar la sospecha razonable de peligro o no más de lo necesario para diligenciar el arresto y abandonar el lugar. La sospecha o creencia razonable de peligro de parte del agente no puede ser una mera especulación, posibilidad o conveniencia de asegurarse de que nadie se oculta en el lugar. Ni puede tratarse del riesgo inherente que ordinariamente enfrentan los agentes del orden público en este tipo de intervención.[46]

-III-

Por tratarse de señalamientos de error que están íntimamente relacionados, procedemos a discutirlos de manera conjunta.

En el presente caso, el Agente Rivera recibió una confidencia de que Apolinar Rondón se encontraba en el apartamento #78 del Residencial Manuel A. Pérez. Al comunicarse con *Management Administration Services Corporation* (*"MAS Corporation"*)[47], particularmente con el Agente Andrés Bruno Feliciano, este le indicó que el apartamento no le pertenecía al Acusado, por lo que Apolinar Rondón se encontraba en el lugar de forma ilegal. Así las cosas y sin mediar orden de registro y allanamiento, el Agente Rivera forzó su entrada obteniendo acceso al apartamento. Allí identificó al Acusado quien se encontraba detrás de una pared de la cocina. Según el testimonio del Agente Rivera, Apolinar Rondón acató los comandos sin resistencia alguna y procedió a ponerlo bajo arresto. Ahora bien, luego del arresto del Acusado, el Agente Rivera se dirigió a una

---

[46] *State* v. *Fisher*, 250 P.3d 1192 (2011); *State* v. *Grossi*, 72 P.3d 686 (2003); *State* v. *Hopkins*, 55 P.3d 691 (2002).
[47] Corporación encargada de la administración de los residenciales públicos en San Juan.

de las habitaciones del apartamento para, alegadamente, asegurarse de que no hubiera otra persona que pudiera causarle daño a él o al propio Acusado. Al entrar a la habitación se percató de un arma de fuego y tres magazines que se encontraban en una tablilla y procedió a comunicarse con Servicios Técnicos para su ocupación.

En la vista del 8 de octubre de 2024, la Defensa hizo una solicitud de supresión de evidencia del arma de fuego y los magazines. Según argumentó, el registro que culminó en la ocupación del arma de fuego y los magazines fue uno ilegal e irrazonable, toda vez que no se trató de un registro incidental al arresto ni existía razón alguna para registrar la habitación. Por su parte, el Ministerio indicó que el registro fue razonable, ya que se basó en la doctrina de *"protective sweep"*. Veamos.

Es harto conocido que una persona que se encuentra ilegalmente en un lugar no tiene expectativa de intimidad. Por lo tanto, a pesar de la ausencia de una orden de registro y allanamiento, no existe controversia sobre la legalidad del arresto de Apolinar Rondón, ya que se tenía una Orden de Arresto a estos efectos.

Pasemos a evaluar la controversia que trajo a las partes ante esta Curia, a saber, la legalidad de la ocupación del arma de fuego y los magazines. Primeramente, debemos evaluar si el registro que culminó en la ocupación del arma y los magazines fue incidental al arresto de Apolinar Rondón. Según el testimonio del Agente Rivera, el arma de fuego y los magazines se encontraban en una habitación a una distancia aproximada de 15 a 20 pies del arrestado. Es decir, mientras Apolinar Rondón se encontraba bajo arresto en el área de la cocina, el Agente Rivera se dirigió a otra área del

apartamento, donde se percató del arma de fuego y los magazines. Por lo tanto, según surge del propio testimonio del Agente Rivera, es evidente que el registro no fue incidental al arresto, ya que se extendió a otras áreas del apartamento, en lugar del área adyacente al Acusado.

Finalmente, nos corresponde evaluar si los hechos que dieron lugar al caso de autos cumplen con la excepción al registro incidental al arresto. La primera modalidad del "*protective sweep*" no requiere sospecha razonable, ya que se trata de un registro incidental al arresto. En la medida en que el registro se extendió más allá del área adyacente al Acusado, concluimos que no se cumplió con dicha modalidad. Ahora, en la segunda modalidad, el Agente debe tener una creencia razonable de que el área alberga a alguien que podría representar una amenaza. Sobre este particular la jurisprudencia ha sido enfática en señalar que no puede ser una *mera especulación o conveniencia* de asegurarse de que nadie se oculta en el lugar. Incluso, en el supuesto de haber una creencia real de que alguien se encuentra en el lugar, el registro se debe limitar a una *inspección visual superficial* de los lugares en los que podría estar escondida la persona. Del testimonio del Agente Rivera no surge que este tuviera una creencia real de que hubiera otra persona en el apartamento. Según indicó, la razón por la que registró la habitación fue por la peligrosidad que representa el Acusado por el crimen que se le imputa. Por lo tanto, al no haber una creencia razonable de que había otra persona en el apartamento, no es de aplicación la excepción de "*protective sweep*".

Nótese que la modalidad de "protective sweep" no ha sido adoptada por nuestro más alto foro como excepción al registro sin orden. Ciertamente se levanta caso a caso como corolario del Registro incidental al Arresto, con o sin orden de arresto. De cierta forma, los Peticionarios argumentan la normativa Federal del caso de *Maryland v. Buie*, supra, de una forma elástica y para otros propósitos no delimitados en los hechos particulares de aquel caso que dieron forma a dicha excepción. No es carta blanca para obviar el trámite de obtener el permiso de un Magistrado mediante una Orden de Registro y Allanamiento a la propiedad en cuestión, justificado con la especulación de la presencia alguien más allá, sin tener una creencia razonable de algún riesgo.

A la luz de la normativa antes expresada, concluimos que el registro en cuestión no fue razonable, por lo que sostenemos la determinación del foro primario de suprimir la evidencia ocupada.

-IV-

Por los fundamentos antes esbozados, se expide el auto y se **confirma** la determinación del foro recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Monge Gómez disiente con opinión escrita.

*Lcda. Lilia M. Oquendo Solís*
*Secretaria del Tribunal de Apelaciones*

| | | |
|---|---|---|
| ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>TRIBUNAL DE APELACIONES<br>PANEL III | | |
| EL PUEBLO DE PUERTO RICO<br><br>PETICIONARIO<br><br><br>V.<br><br><br><br><br>SANTIAGO APOLINAR RONDÓN<br><br>RECURRIDO | KLCE202401144 | *CERTIORARI*<br>procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br>_____<br>Caso Criminal:<br>KVI2023-G027-029<br>KLA2023-G0175-0176<br>KLA2023-G0194-0195<br>K0P2023-G0027<br>_____<br>SOBRE:<br>ART. 93 (A)1ER G.<br>(2 CASOS)<br>TENT. ART. 93 (A)<br>ART. 6.05 LEY 168<br>ART. 6.14 (B)LEY 168(3 CASOS)<br>ART. 249 (B) GR CP |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

**VOTO DISIDENTE DEL JUEZ MONGE GÓMEZ**

En San Juan, Puerto Rico, a 27 de enero de 2025.

En vista del curso de acción tomado por la Mayoría de este Tribunal, y por los fundamentos que expondré a continuación, no puedo suscribir la *Sentencia* que hoy emiten mis respetados compañeros de Panel.

Para propósitos argumentativos, suscribo los hechos justo como fueron reseñados en el dictamen emitido en el día de hoy.

Tal y como fue especificado en la *Sentencia* de la Mayoría, la prueba presentada durante la vista celebrada el 8 de octubre de 2024 estableció que el Sr. Santiago Apolinar Rondón se encontraba ilegalmente en el inmueble en el que se realizó el arresto y se llevó a cabo la incautación de los magazines y el arma de fuego, aquí en controversia. Sobre lo anterior, no existe discrepancia alguna. Ahora bien, conforme fue señalado por mis compañeros, el Tribunal de Primera Instancia entendió que procedía la supresión de dicha evidencia, toda vez que tanto la Constitución de Puerto Rico como la Constitución de los Estados Unidos de América prohíben los

registros irrazonables o, lo que es igual, aquellos que carecen de una justificación o razón para efectuarlo. De igual manera, el foro primario estableció en el dictamen recurrido que el registro debía ser incidental al arresto llevado a cabo y que un arresto legítimamente efectuado no valida un registro sin orden. Así pues, a la luz de lo hechos particulares del presente caso, concluyó el TPI que debido a que la incautación de la prueba en controversia se llevó a cabo fuera del perímetro del acusado y no se estableció justificación alguna que pusiera en peligro la seguridad del acusado o de los agentes, procedía la supresión de los magazines y del arma de fuego.

A la luz del estado de derecho aplicable al caso, es mi posición que dicha determinación es errónea en derecho. Me explico.

Es harto conocido que tanto la Constitución de Estados Unidos de América, como la Constitución de Puerto Rico contienen disposiciones que protegen a los ciudadanos contra registros e incautaciones irrazonables de sus hogares, vehículos, efectos personales o cualquier propiedad o lugar **en donde éstos posean una expectativa razonable a la intimidad**. Pueblo v. Álvarez de Jesús, 214 DPR ___ (2024); 2024 TSPR 87. En detalle, la Sección 10 del Artículo II de nuestra Carta Magna establece lo siguiente:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
>
> No se interceptará la comunicación telefónica.
>
> Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por [la] autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.
>
> Evidencia obtenida en violación de esta sección será inadmisible en los tribunales. Art. II, Sec. 10, Const. PR, LPRA, Tomo 1.

El propósito de estas disposiciones constitucionales es proteger el derecho a la intimidad y dignidad del individuo ante actuaciones irrazonables del Estado e insertar la figura del juez para ofrecer una mayor

garantía de razonabilidad a la intervención con los ciudadanos. Pueblo v. Báez López, 189 DPR 918, 927 (2013). Como consecuencia, cuando se alega una violación a las transcritas disposiciones constitucionales, es necesario evaluar si ocurrió un registro que violentó el derecho de intimidad que se le reconoce al individuo sobre el objeto registrado. Íd., págs. 928-929.

Como cuestión de umbral, y **como primer paso**, se debe determinar si "la persona tiene una expectativa razonable de intimidad dentro de las circunstancias particulares que rodean el caso y si ese derecho está reconocido por nuestra sociedad". Pueblo v. López Colón, 200 DPR 273, 285 (2018). Así pues, un lugar u objeto estará protegido por el mencionado precepto constitucional de conformidad con la naturaleza de la intrusión gubernamental, **la expectativa de intimidad del ciudadano** y el método investigativo utilizado. Pueblo v. Rivera Colón, 128 DPR 672, 683 (1991). Determinado lo anterior, y **como segundo paso**, "se deberá establecer un balance entre la expectativa de intimidad del ciudadano, protegida por la garantía constitucional, y los intereses públicos que hayan motivado la actuación estatal". Pueblo v. López Colón, *supra*, pág. 285. Esto implica que no todos los registros sin orden judicial son ilegales, ya que "lo que la Constitución intenta evitar son los registros irrazonables". Pueblo v. Rivera Colón, *supra*, pág. 682.

A la luz de dichos preceptos constitucionales, una persona agraviada por un allanamiento o un registro ilegal puede solicitar la supresión de la evidencia, al amparo de la Regla 234 de Procedimiento Criminal, 34 LPRA, Ap. II, R. 234. Al activar este mecanismo procesal, el peticionario carga con el peso de especificar los hechos o razones en que basa su solicitud. Se ha resuelto que uno de los fundamentos que activa la supresión de evidencia es que la misma fue ilegalmente ocupada, toda vez que no mediaba orden judicial. En este tipo de supuesto, el imputado o acusado tiene que demostrar contar con legitimación activa para solicitar dicho remedio. Dicho de otro modo, es requisito *sine qua non* que debe

demostrar que poseía una expectativa legítima y razonable de intimidad en el lugar ilegalmente registrado. Pueblo v. Álvarez de Jesús, *supra*; Pueblo v. Rivera Colón, *supra*, pág. 683.

Sobre este particular, nuestro Tribunal Supremo ha expresado que "[u]na persona que se encuentra ilegalmente en un sitio **no tiene legitimación activa para reclamar el derecho contra un registro irrazonable garantizado constitucionalmente, pues no tiene expectativa de intimidad alguna.** El peso de probar que estaba legalmente en dicho sitio le corresponde al acusado". Pueblo v. Ramos Santos, 132 DPR 363, 371-372 (1992) (énfasis suplido).

De acuerdo con el marco legal reseñado, no me cabe duda alguna de que en el caso de autos no procedía la supresión de los magazines y del arma de fuego incautados durante el arresto del señor Apolinar Rondón. La jurisprudencia de nuestro más alto foro judicial ha sido enfática al disponer que el paso inicial al analizar este tipo de controversia requiere que, en primera instancia, se determine si "**la persona tiene una expectativa razonable de intimidad dentro de las circunstancias particulares que rodean el caso y si ese derecho está reconocido por nuestra sociedad**". Pueblo v. López Colón, *supra*, pág. 285. Tal y como resolvió el Tribunal Supremo en Pueblo v. Ramos Santos, *supra*, ninguna persona que se encuentre ilegalmente en un lugar posee legitimación activa para invocar el mecanismo reconocido en la Regla 234 de Procedimiento Criminal, *supra*, y solicitar la supresión de una evidencia incautada durante un registro presuntamente ilegal.

Habiéndose demostrado manifiestamente durante la vista del 8 de octubre de 2024 que el acusado estaba ilegalmente en el apartamento #78 del Edificio E-10 del Residencial Manuel A. Pérez, la conclusión correcta en derecho era rechazar la solicitud de supresión de los magazines y del arma de fuego que fueron incautados por el Estado, **pues simple y llanamente éste carecía de legitimación activa para invocar la**

**protección que le ofrece nuestra Constitución contra registros y allanamientos irrazonables**.

En otras palabras, sostengo que no era necesario analizar la licitud de la ocupación a la luz de la excepción a dicha normativa constitucional sobre los registros incidentales al arresto o si los hechos del caso daban paso a la aplicación de la doctrina del "protective sweep". Luego de concluir que el señor Apolinar Rondón estaba ilegalmente en la propiedad en que se efectuó el arresto y se incautó la evidencia cuya supresión se peticionó, la conclusión debía ser acoger la solicitud del Estado ante este Tribunal y revocar la determinación del foro recurrido.

En definitiva, no coincido con la determinación de la Mayoría de este Panel, en tanto, concluyen que procedía la supresión de la evidencia obtenida por el Estado durante el arresto efectuado al acusado de epígrafe. Me reitero en que este último carecía de *standing* para efectuar su solicitud, al amparo de la protección constitucional contra registros y allanamientos irrazonables, pues se encontraba ilegalmente en el inmueble en que se incautó la evidencia.

Por los fundamentos expuestos anteriormente, *disiento* pues hubiera expedido y revocado el dictamen recurrido.

**JOSÉ JOHEL MONGE GÓMEZ**
**JUEZ DEL TRIBUNAL DE APELACIONES**